IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRANCH BANKING AND
TRUST COMPANY,

      Plaintiff,

    v.

JOSEPH KOZAK,

      Defendant.

Civil Action File
No. 1:16-cv-02819-TWT

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AGAINST DEFENDANT**

Plaintiff Branch Banking and Trust Company ("BB&T") hereby files its Brief

in Support of its Motion for Summary Judgment Against Defendant Joseph Kozak

("Kozak") seeking judgment against Kozak for breach of a promissory note and

attorneys' fees pursuant to O.C.G.A. § 13-1-11.

## I.    INTRODUCTION

BB&T is the holder of a promissory note executed by Kozak that is in default

due to his failure to pay the note in full at maturity.  Kozak asserts that his obligation

has been discharged because one of his co-obligors made a partial payment to BB&T

to resolve the co-debtor's individual obligation on the loan.  Kozak's defenses fail

because the promissory note was a joint and several contract, which allows BB&T

to look for repayment from Kozak, his co-obligors, or all of them, and expressly

441697:1:ATLANTA

provides that the release of one obligor does not discharge the several contracts with the other obligors.  Moreover, Kozak previously represented under oath during his divorce proceedings – on at least three occasions – that he remained liable to BB&T following his co-obligor's partial payment.

BB&T requests the Court grant summary judgment in its favor and against Kozak, as the record contains no genuine dispute as to any material fact relating to his liability under the note, the amounts outstanding under the note, BB&T's right to reasonable attorneys' fees, pursuant to  O.C.G.A. § 13-1-11, or Kozak's defenses.

## II.    STATEMENT OF FACTS

### A.    The Loan Documents.

On March 31, 2003, FK Dunwoody, LLC ("FK Dunwoody") executed and delivered to BB&T that certain Promissory Note of even date in the face amount of $383,000.00 ("Note 1").  (Deposition of Joseph Kozak ("Kozak Dep.") at 26:8-26:23 & Ex. 3.)  BB&T loaned $383,000.00 to FK Dunwoody, as memorialized in Note 1 (the "Loan").  (*Id.* at 33:6-33:15, 94:16-94:20.)  Note 1 was guaranteed by Kozak, Joseph Faught ("Faught"), and their respective wives. (*Id.* at 34:4-34:15, 38:8-38:13 & Ex. 5.)  FK Dunwoody and BB&T entered into a series of Note Modification Agreements that extended the maturity date of Note 1.  (*Id.* at 95:13-98:24 & Ex. 15.)

441697:1:ATLANTA

In 2010, Kozak and Faught agreed to execute a new promissory note for the same Loan in the capacity of principal obligors, along with FK Dunwoody, instead of serving as guarantors of the Loan.  (*Id.* at 39:12-39:16, 40:19-40:23, 44:20-45:1, 98:25-99:3.)  On September 23, 2010, Kozak, both in his capacity as member and manager of FK Dunwoody and in his individual capacity as a co-maker, executed and delivered to BB&T that certain counterpart of a Promissory Note of even date in the face amount of $276,353.56 (the "Kozak Note 2 Counterpart").  (*Id.* at 38:16-39:11 & Ex. 6.)  Faught, both in his capacity as member and manager of FK Dunwoody, and in his individual capacity as a co-maker, executed and delivered to BB&T an identical counterpart of a Promissory Note dated September 23, 2010, in the face amount of $276,353.56 (the "Faught Note 2 Counterpart").  (*Id.* at 43:8-48:17 & Ex. 7, ¶ 3 & Ex. A.)  The principal amount of $276,353.56 reflected in the Kozak Note 2 Counterpart and the Faught Note 2 Counterpart (collectively, "Note 2") referred to the then-outstanding principal balance owed on the Loan.  (*Id.* at 43:18-43:23; 45:19-25.)

Note 2 states that "the undersigned, jointly and severally, if more than one, promises to pay [BB&T] . . . the sum of [$276,353.56]."  (*Id.*, Ex. 6 at 1, Ex. 7 at Ex A at 1.)  Note 2 further states that "[i]f more than one party shall execute this Note, the term 'undersigned' as used herein shall mean all the parties signing this Note and

each of them, and all such parties shall be jointly and severally obligated hereunder."

(*Id.*, Ex. 6 at 3, Ex. 7 at Ex A at 3.)  Kozak, Faught, and FK Dunwoody also each agreed in Note 2 that any release by BB&T of one person liable on Note 2 would not discharge the liability of any other persons liable on Note 2:

> From time to time, at the Bank's option, the maturity date of this Note may be extended, or this Note may be renewed in whole or in part, or a new note of different form may be substituted for this Note, or the rate of interest may be modified, or changes may be made in consideration of loan extensions, and the holder hereof, from time to time may waive or surrender, either in whole or in part any rights, guaranties, secured interest or liens, given for the benefit of the holder in connection with the payment and the securing the payment of this Note; but no such occurrence shall in any manner affect, limit, modify, or otherwise impair any rights, guaranties or security of the holder not specifically waived, released, or surrendered in writing, nor shall the undersigned makers, or any guarantor, endorser, or any person who is or might be liable hereon, either primarily or contingently, be released from such event. *The holder hereof, from time to time, shall have the unlimited right to release any person who might be liable hereon, and such release shall not affect or discharge the liability of any other person who is or might be liable hereon.*

(*Id.* (emphasis added).)

BB&T is the holder of Note 1, Note 2, and all documents executed in connection therewith or pursuant thereto (collectively, the "Loan Documents"). (Declaration of Diane Schramm ("Schramm Decl."), ¶ 12.)

**B.    The Obligors Default Under the Loan Documents, Faught Settles His Individual Obligation, and Kozak Admits His Continued Liability to BB&T During Divorce Proceedings.**

4

441697:1:ATLANTA

Kozak, Faught, and FK Dunwoody defaulted under Note 2 by failing to pay the Loan in full upon the maturity of Note 2 on January 5, 2011. (*Id.*, ¶ 13; Kozak Dep. at 39:17-40:7, 46:1-46:4.)

On May 24, 2011, Faught made a payment to BB&T in the amount of $75,000.00 (the "Faught Payment") to resolve his individual obligation to BB&T under the Loan Documents.  (Schramm Decl., ¶ 14; Kozak Dep. at Ex. 7, ¶ 5.) BB&T did not accept the Faught Payment in satisfaction of the Loan or intend for the Faught Payment to release Kozak from his obligation under Note 2.  (Schramm Decl., ¶ 15.)

Kozak's defense in this litigation is that his obligation to BB&T was discharged by the Faught Payment.  (*Id.* at 60:19-61:1.)  Kozak's current litigation position, as well as his deposition testimony that "[b]ack in 2011, I had no idea that BB&T and Bob Faught settled his agreement separately," (*id.* at 52:2-52:6) are inconsistent with multiple statements he made under oath during his divorce proceedings in 2012 and 2013.

On January 3, 2012, during a hearing on a contempt motion filed against him for failing to meet his financial obligations, Kozak testified that he remained liable to BB&T after the Faught Payment:

Q:     The BB&T loan, explain to the court why it's deferred.

A.    The BB&T loan was a loan that the Kozak family and the Faught family took out in support of a business that we used to have called Brusters.  That loan was called due to nonpayment, and the other party, the Faught family, paid their half of the loan in full up front.  As result of that in conferences that we've had with BB&T they have agreed to defer payment on my part pending the outcome of the divorce hearings. Since they have already received 50 percent of the loan up front, they agreed to defer.

Q.    And it's an obligation that you realize that the family has?

A.    Yes, it is.

(*Id.* at 74:5-79:12 & Ex. 10 at 18:2-18:15.)

In an Amended Domestic Relations Financial Affidavit of Joseph M. Kozak, filed with the court on May 29, 2013, Kozak represented under oath that his obligation to BB&T as of that date was $138,000.00.  (*Id.* at 80:4-81:17 & Ex. 11 at 8.)  During his deposition in this action, Kozak confirmed that he believed he was liable to BB&T for the amount of $138,000.00, or half of the principal amount recited in Note 2, and he believed the other half of the obligation belonged to Faught. (*Id.* at 81:13-81:23.)

But in a Domestic Relations Financial Affidavit filed with the court six months later, on December 20, 2013, Kozak represented, again under oath, that the amount of his obligation to BB&T was $275,000.00, or approximately the entire principal amount recited in Note 2.  (*Id.* at 84:11-86:22 & Ex. 12 at unnumbered 9.) Kozak submitted the Domestic Relations Financial Affidavit in December 2013

6

441697:1:ATLANTA

showing an increased obligation to BB&T at a time when he was requesting that the divorce court reduce his monthly alimony and child support payments. (*Id.* at 85:9-86:22.)

## C.    BB&T Sends Kozak Notice of Default.

By letter dated July 19, 2016, BB&T provided Notice of Default to Kozak as a result of Kozak's failure to repay the Loan in full upon the maturity of Note 2 and demanded the immediate payment of all amounts due and owing under the Loan Documents (the "Notice of Default"). (*Id.* at 55:25-56:9 & Ex. 8.)  The Notice of Default provided Kozak with ten (10) days from its receipt in which to pay all amounts owed under the Loan Documents without incurring liability for BB&T's attorneys' fees, pursuant to O.C.G.A. § 13-1-11. (*Id.*, Ex. 8.)

Kozak did not pay the Loan in full within 10 days of his receipt of the Notice of Default. (*Id.* at 56:10-56:12.)  Kozak admits the Loan has not been repaid in full.[1] (*Id.* 94:21-95:1.)

## D.    BB&T's Damages.

As of March 29, 2018, the following amounts are owed on Note 2, exclusive

---

[1] BB&T commenced this action on August 3, 2016.  [Doc. 1.]  On January 24, 2017, just two days before Kozak's scheduled deposition, Kozak filed bankruptcy. [Doc. 22]  (Kozak Dep. at 13:23-14:3.)  On December 4, 2017, the bankruptcy court entered an Order Granting United States Trustee's Motion to Dismiss Case, and dismissed Kozak's bankruptcy.  [Doc. 24-1.]

441697:1:ATLANTA

of statutory attorneys' fees:  principal balance in the amount of $197,645.00; accrued interest in the amount of $96,648.95; *per diem* interest after March 29, 2018, and through judgment in the amount of $39.80; and fees in the amount of $372.04. (Schramm Decl., ¶ 26 & Ex. 8.)  Kozak does not have any evidence to dispute the amounts owed on the Loan.  (Kozak Dep. at 58:11-58:23, 59:19-60:4.)

In addition, Note 2 states that "[i]f this Note is placed with an attorney for collection, the undersigned agrees to pay, in addition to principal and interest, all costs of collection and reasonable attorneys' fees."  (Kozak Dep., Ex. 6 at 3.) Pursuant to O.C.G.A. § 13-1-11(a)(2), "reasonable attorneys' fees" is construed to mean 15 percent of the first $500.00 of principal and interest owing on the Note and 10 percent of the amount of principal and interest owing thereon in excess of $500.00.  O.C.G.A. § 13-1-11(a)(2).

As of March 29, 2018, BB&T's reasonable attorneys' fees equal $29,454.40, with such reasonable attorneys' fees continuing to accrue through judgment along with the *per diem* interest in the amount of $3.98 per day.  Schramm Decl., ¶ 28.)

### III.    ARGUMENT AND CITATION OF AUTHORITY

BB&T is entitled to judgment as a matter of law, as there are no genuine disputes of material fact regarding Kozak's liability under the Loan Documents, the amounts owed by Kozak under the Loan Documents, BB&T's right to attorneys'

8

441697:1:ATLANTA

fees based on the statutory formula in O.C.G.A. § 13-1-11(a)(2), or Kozak's defenses.

## A.    Summary Judgment Standard.

"The court shall grant summary judgment summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[G]enuine disputes of facts are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant.  For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1304 (11th Cir. 2009) (affirming summary judgment).

## B.    BB&T Established its Prima Facie Case for Breach of the Loan Documents and is Entitled to Summary Judgment.

A plaintiff establishes a prima facie case in a suit to enforce a promissory note by producing the note and showing it was executed. *L.D.F. Family Farm, Inc. v. Charterbank*, 756 S.E.2d 593, 596 (Ga. App. 2014).  "Once that prima facie case has been made, the plaintiff is entitled to judgment as a matter of law unless the defendant can establish a defense." *Id.*

BB&T is the holder of Note 2.  (Schramm Decl., ¶ 12.)  Kozak admitted he signed Note 2.  (Kozak Dep. at 38:16-39:11 & Ex. 6.)  Accordingly, BB&T has proved a prima facie case for recovery under Note 2.

9

## C.    The Amounts Owed Under the Loan Documents are Undisputed.

As of March 29, 2018, the following amounts are owed on Note 2, exclusive of statutory attorneys' fees:  principal balance in the amount of $197,645.00; accrued interest in the amount of $96,648.95; *per diem* interest after March 29, 2018, and through judgment in the amount of $39.80; and fees in the amount of $372.04. (Schramm Decl., ¶ 26 & Ex. 8.)

## D.    BB&T is Entitled to Attorneys' Fees Pursuant to O.C.G.A. § 13-1-11.

BB&T is entitled to an award of "reasonable attorneys' fees," pursuant to the Note and O.C.G.A. § 13-1-11.  The Supreme Court of Georgia has held that "attorney fees sought under O.C.G.A. § 13-1-11 are mandatory where the statute's conditions have been clearly satisfied." *Austin v. Bank of Am., N.A.*, 743 S.E.2d 399, 406 (Ga. 2013) (awarding attorneys' fees pursuant to O.C.G.A. § 13-1-11).  BB&T's Notice of Default notified Kozak of its intent to enforce the attorneys' fees provision in the Note following its maturity, and gave Kozak an opportunity to pay the principal and interest within ten days of receipt of the Notice of Default without incurring liability for attorneys' fees.  (Kozak Dep. at 55:25-56:9 & Ex. 8.)  *See* O.C.G.A. § 13-1-11(a)(3).  Kozak failed to repay the principal and interest within ten days of receipt of the Notice of Default and, "[c]onsequently, after the expiration of ten days, [Hall's] total obligation included the matured principal and interest

10

obligation as well as attorney fees pursuant to O.C.G.A. § 13-1-11." (*Id.* at 56:10-56:12.) *Austin*, 743 S.E.2d at 403.

The Note provides for "reasonable attorneys' fees," which "shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00." (Kozak Dep., Ex. 6 at 3.) O.C.G.A. § 13-1-11(a)(2). As of March 29, 2018, BB&T's reasonable attorneys' fees equaled $29,454.40,[2] with such reasonable attorneys' fees continuing to accrue through judgment along with the *per diem* interest in the amount of $3.98 per day. (Schramm Decl., ¶ 28.)

## E.   Kozak Fails to Establish an Affirmative Defense.

Since BB&T has established its prima facie right to summary judgment on Note 2, the burden of proof shifts to Kozak to establish an affirmative defense. *L.D.F. Family Farm*, 756 S.E.2d at 596.

---

[2] Kozak is not entitled to petition the Court to determine the reasonableness of the attorneys' fees based on the current version of O.C.G.A. § 13-1-11(b). That provision, which allows a party required to pay an award of attorneys' fees in an amount greater than $20,000.00 to petition the court for a determination of reasonableness, applies only to contracts entered into after July 1, 2011. *See Branch Banking & Trust Co. v. Camco Mgmt., LLC*, 704 Fed. Appx. 826, 830 (11th Cir. 2017) (citing *Austin v. Bank of Am., N.A.*, 743 S.E.2d 399, 404 n.2 (Ga. 2013)). Note 2 was entered into on September 23, 2010.

Kozak asserts defenses of release and accord and satisfaction, arguing that his obligation was discharged because BB&T accepted the Faught Payment to settle Faught's individual obligation to BB&T.[3]  (Kozak Dep. at 60:19-61:1.)  Kozak's defenses fail because Note 2 expressly provides that Kozak, Faught, and FK Dunwoody were "jointly and severally obligated."  (*Id.*, Ex. 6 at 3, Ex. 7 at Ex A at 3 (emphasis added).)

"A joint and several contract is a contract with each promisor and a joint contract with all."  *CCE Federal Credit Union v. Chesser*, 258 S.E.2d 2, 5 (Ga. App. 1979).  As such, a creditor can look to any or all of the co-makers for payment and the release of one co-maker does not preclude the creditor from enforcing the contract against another co-maker.  *Id.* (enforceable contract existed between creditor and debtor after co-debtor was released).  *See also Hubert v. Lawson*, 247 S.E.2d 223, 224 (Ga. App. 1978) ("The release of one joint contractor releases all, but the rule is different where the obligations are joint and several, in which event the plaintiff may sue either the one or the other or both at his election.")  Thus, BB&T's acceptance of the Faught Payment from Faught to resolve his obligation does not preclude BB&T from recovering the remaining balance from Kozak.

---

[3] Kozak also asserts the affirmative defense of payment.  BB&T credited the Faught Payment against the outstanding principal owed on the Loan.  (Schramm Decl. at Ex. 7.)

12

Kozak acknowledged this basic premise of joint and several contracts when he executed the Kozak Note 2 Counterpart and agreed that BB&T's release of one of the joint and several obligors "*shall not affect or discharge the liability of any other person who is or might be liable hereon*." (*Id.*, Ex. 6 at 3, Ex. 7 at Ex A at 3 (emphasis added).) Kozak further admitted on multiple occasions during his divorce proceedings in 2012 and 2013 that he was liable for at least half, if not all, of the Loan following the Faught Payment. (*Id.* at 74:5-79:12, 80:4-81:17, 81:13-81:23, 84:11-86:22, 85:9-86:22 & Ex. 10 at 18:2-18:15, Ex. 11 at 8, Ex. 12 at unnumbered 9.) Accordingly, Kozak's defenses fail as a matter of law and BB&T is entitled to summary judgment.

## IV.   CONCLUSION

BB&T has established its right to recover on the Loan Documents and that Kozak's affirmative defenses fail as a matter of law. Since the amount owed under the Note is undisputed, BB&T is entitled to entry of judgment against Kozak as follows:  principal balance in the amount of $197,645.00; accrued interest in the amount of $96,648.95; *per diem* interest after March 29, 2018, and through judgment in the amount of $39.80; fees in the amount of $372.04; and O.C.G.A. § 13-1-11 attorneys' fees in the amount of $29,454.40, with such reasonable attorneys' fees continuing to accrue through judgment along with the *per diem* interest in the

13

amount of $3.98 per day.

This 29th day of March, 2018.

**STITES & HARBISON, PLLC**

*/s/ Brian J. Levy*

Paul G. Durdaller
Georgia Bar No. 234890
pdurdaller@stites.com
Brian J. Levy
Georgia Bar No. 302518
blevy@stites.com
COUNSEL FOR PLAINTIFF

303 Peachtree Street, N.E.
Suite 2800
Atlanta, Georgia 30308
Telephone:   (404) 739-8800
Facsimile:   (404) 739-8870

14

# <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1D, the undersigned counsel certifies that the foregoing has been prepared in Times New Roman 14 point, one of the four fonts and points approved by the Court in LR 5.1C.

**STITES & HARBISON, PLLC**

*/s/ Brian J. Levy*
Paul G. Durdaller
Georgia Bar. No. 234890
pdurdaller@stites.com
Brian J. Levy
Georgia Bar No. 302518
blevy@stites.com
COUNSEL FOR PLAINTIFF

303 Peachtree Street, N.E.
Suite 2800
Atlanta, Georgia 30308
Telephone:   (404) 739-8800
Facsimile:    (404) 739-8870

15

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT was served via CM/ECF on all attorneys of record.

This 29th day of March, 2018.

STITES & HARBISON, PLLC

/s/ Brian J. Levy
Paul G. Durdaller
Georgia Bar No. 234890
pdurdaller@stites.com
303 Peachtree Street, N.E.
Suite 2800                          Brian J. Levy
Atlanta, Georgia 30308              Georgia Bar No. 302518
Telephone:  (404) 739-8800          blevy@stites.com
Facsimile:   (404) 739-8870         COUNSEL FOR PLAINTIFF

16