IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRANCH BANKING AND
TRUST COMPANY,

        Plaintiff,

    v.

JOSEPH KOZAK,

        Defendant.

Civil Action File
No. 1:16-cv-02819-TWT

**STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AGAINST DEFENDANT**

Plaintiff Branch Banking and Trust Company ("BB&T"), pursuant to Northern District of Georgia Local Rule 56.1(B)(1), submits the following statement of material facts as to which there is no genuine issue to be tried in support of its Motion for Summary Judgment Against Defendant Joseph Kozak ("Kozak").

**A.      The Loan Documents.**

1.      On March 31, 2003, FK Dunwoody, LLC ("FK Dunwoody") executed and delivered to BB&T that certain Promissory Note of even date in the face amount of $383,000.00 ("Note 1").  (Deposition of Joseph Kozak ("Kozak Dep.") at 26:8-26:23 & Ex. 3.)

2.    BB&T loaned $383,000.00 to FK Dunwoody, as memorialized in Note 1 (the "Loan").  (*Id.* at 33:6-33:15, 94:16-94:20.)

3.    Note 1 was guaranteed by Kozak, Joseph Faught ("Faught"), and their respective wives.  (*Id.* at 34:4-34:15, 38:8-38:13 & Ex. 5.)

4.    FK Dunwoody and BB&T entered into a series of Note Modification Agreements that extended the maturity date of Note 1.  (*Id.* at 95:13-98:24 & Ex. 15.)

5.    In 2010, Kozak and Faught agreed to execute a new promissory note for the same Loan in the capacity of principal obligors, along with FK Dunwoody, instead of serving as guarantors of the Loan.  (*Id.* at 39:12-39:16, 40:19-40:23, 44:20-45:1, 98:25-99:3.)

6.    On September 23, 2010, Kozak, both in his capacity as member and manager of FK Dunwoody and in his individual capacity as a co-maker, executed and delivered to BB&T that certain counterpart of a Promissory Note of even date in the face amount of $276,353.56 (the "Kozak Note 2 Counterpart").  (*Id.* at 38:16-39:11 & Ex. 6.)

7.    Faught, both in his capacity as member and manager of FK Dunwoody, and in his individual capacity as a co-maker, executed and delivered to BB&T an identical counterpart of a Promissory Note dated September 23, 2010, in the face

amount of $276,353.56 (the "Faught Note 2 Counterpart").  (*Id.* at 43:8-48:17 & Ex. 7, ¶ 3 & Ex. A.)

8.     The principal amount of $276,353.56 reflected in the Kozak Note 2 Counterpart and the Faught Note 2 Counterpart (collectively, "Note 2") referred to the then-outstanding principal balance owed on the Loan.  (*Id.* at 43:18-43:23; 45:19-25.)

9.     Note 2 states that "the undersigned, jointly and severally, if more than one, promises to pay [BB&T] . . . the sum of [$276,353.56]."  (*Id.*, Ex. 6 at 1, Ex. 7 at Ex A at 1.)

10.    Note 2 further states that "[i]f more than one party shall execute this Note, the term 'undersigned' as used herein shall mean all the parties signing this Note and each of them, and all such parties shall be jointly and severally obligated hereunder."  (*Id.*, Ex. 6 at 3, Ex. 7 at Ex A at 3.)

11.    Kozak, Faught, and FK Dunwoody also each agreed in Note 2 that any release by BB&T of one person liable on Note 2 would not discharge the liability of any other persons liable on Note 2:

> From time to time, at the Bank's option, the maturity date of this Note may be extended, or this Note may be renewed in whole or in part, or a new note of different form may be substituted for this Note, or the rate of interest may be modified, or changes may be made in consideration of loan extensions, and the holder hereof, from time to time may waive or surrender, either in whole or in part any rights, guaranties, secured

3

interest or liens, given for the benefit of the holder in connection with the payment and the securing the payment of this Note; but no such occurrence shall in any manner affect, limit, modify, or otherwise impair any rights, guaranties or security of the holder not specifically waived, released, or surrendered in writing, nor shall the undersigned makers, or any guarantor, endorser, or any person who is or might be liable hereon, either primarily or contingently, be released from such event. *The holder hereof, from time to time, shall have the unlimited right to release any person who might be liable hereon, and such release shall not affect or discharge the liability of any other person who is or might be liable hereon.*

(*Id.* (emphasis added).)

12.     BB&T is the holder of Note 1, Note 2, and all documents executed in connection therewith or pursuant thereto (collectively, the "Loan Documents"). (Declaration of Diane Schramm ("Schramm Decl."), ¶ 12.)

**B.     The Obligors Default Under the Loan Documents, Faught Settles His Individual Obligation, and Kozak Admits His Continued Liability to BB&T During Divorce Proceedings.**

13.     Kozak, Faught, and FK Dunwoody defaulted under Note 2 by failing to pay the Loan in full upon the maturity of Note 2 on January 5, 2011.  (*Id.*, ¶ 13; Kozak Dep. at 39:17-40:7, 46:1-46:4.)

14.     Kozak, Faught, and FK Dunwoody defaulted under Note 2 by failing to pay the Loan in full upon the maturity of Note 2 on January 5, 2011.  (*Id.*, ¶ 13; Kozak Dep. at 39:17-40:7, 46:1-46:4.)

4

15.     On May 24, 2011, Faught made a payment to BB&T in the amount of $75,000.00 (the "Faught Payment") to resolve his individual obligation to BB&T under the Loan Documents.  (Schramm Decl., ¶ 14; Kozak Dep. at Ex. 7, ¶ 5.)

16.     BB&T did not accept the Faught Payment in satisfaction of the Loan or intend for the Faught Payment to release Kozak from his obligation under Note 2. (Schramm Decl., ¶ 15.)

17.     On January 3, 2012, during a hearing on a contempt motion filed against him for failing to meet his financial obligations, Kozak testified that he remained liable to BB&T after the Faught Payment:

Q:     The BB&T loan, explain to the court why it's deferred.

A.     The BB&T loan was a loan that the Kozak family and the Faught family took out in support of a business that we used to have called Brusters.  That loan was called due to nonpayment, and the other party, the Faught family, paid their half of the loan in full up front.  As result of that in conferences that we've had with BB&T they have agreed to defer payment on my part pending the outcome of the divorce hearings. Since they have already received 50 percent of the loan up front, they agreed to defer.

Q.     And it's an obligation that you realize that the family has?

A.     Yes, it is.

(*Id.* at 74:5-79:12 & Ex. 10 at 18:2-18:15.)

18.     In an Amended Domestic Relations Financial Affidavit of Joseph M. Kozak, filed with the court on May 29, 2013, Kozak represented under oath that his

5

obligation to BB&T as of that date was $138,000.00. (*Id.* at 80:4-81:17 & Ex. 11 at 8.)  During his deposition in this action, Kozak confirmed that he believed he was liable to BB&T for the amount of $138,000.00, or half of the principal amount recited in Note 2, and he believed the other half of the obligation belonged to Faught. (*Id.* at 81:13-81:23.)

19.    In a Domestic Relations Financial Affidavit filed with the court six months later, on December 20, 2013, Kozak represented, again under oath, that the amount of his obligation to BB&T was $275,000.00, or approximately the entire principal amount recited in Note 2.  (*Id.* at 84:11-86:22 & Ex. 12 at unnumbered 9.)

## C.    BB&T Sends Kozak Notice of Default.

20.    By letter dated July 19, 2016, BB&T provided Notice of Default to Kozak as a result of Kozak's failure to repay the Loan in full upon the maturity of Note 2 and demanded the immediate payment of all amounts due and owing under the Loan Documents (the "Notice of Default").  (*Id.* at 55:25-56:9 & Ex. 8.)

21.    The Notice of Default provided Kozak with ten (10) days from its receipt in which to pay all amounts owed under the Loan Documents without incurring liability for BB&T's attorneys' fees, pursuant to O.C.G.A. § 13-1-11. (*Id.*, Ex. 8.)

442134:1:ATLANTA

22.     Kozak did not pay the Loan in full within 10 days of his receipt of the Notice of Default.  (*Id.* at 56:10-56:12.)

23.     Kozak admits the Loan has not been repaid in full.[1]  (*Id.* 94:21-95:1.)

**D.     BB&T's Damages.**

24.     As of March 29, 2018, the following amounts are owed on Note 2, exclusive of statutory attorneys' fees:   principal balance in the amount of $197,645.00; accrued interest in the amount of $96,648.95; *per diem* interest after March 29, 2018, and through judgment in the amount of $39.80; and fees in the amount of $372.04.  (Schramm Decl., ¶ 26 & Ex. 8.)

25.     In addition, Note 2 states that "[i]f this Note is placed with an attorney for collection, the undersigned agrees to pay, in addition to principal and interest, all costs of collection and reasonable attorneys' fees."  (Kozak Dep., Ex. 6 at 3.)

26.     Pursuant to O.C.G.A. § 13-1-11(a)(2), "reasonable attorneys' fees" is construed to mean 15 percent of the first $500.00 of principal and interest owing on the Note and 10 percent of the amount of principal and interest owing thereon in excess of $500.00.  O.C.G.A. § 13-1-11(a)(2).

---

[1] BB&T commenced this action on August 3, 2016.  [Doc. 1.]  On January 24, 2017, just two days before Kozak's scheduled deposition, Kozak filed bankruptcy. [Doc. 22]  (Kozak Dep. at 13:23-14:3.)  On December 4, 2017, the bankruptcy court entered an Order Granting United States Trustee's Motion to Dismiss Case, and dismissed Kozak's bankruptcy.  [Doc. 24-1.]

442134:1:ATLANTA

27.    As of March 29, 2018, BB&T's reasonable attorneys' fees equal $29,454.40, with such reasonable attorneys' fees continuing to accrue through judgment along with the *per diem* interest in the amount of $3.98 per day.  (Schramm Decl., ¶ 28.)

This 29th day of March, 2018.

                                                     **STITES & HARBISON, PLLC**

                                                     */s/ Brian J. Levy*
                                                      Paul G. Durdaller
                                                      Georgia Bar No. 234890
303 Peachtree Street, N.E.                            pdurdaller@stites.com
Suite 2800                                            Brian J. Levy
Atlanta, Georgia 30308                                Georgia Bar No. 302518
Telephone:   (404) 739-8800                           blevy@stites.com
Facsimile:   (404) 739-8870                           COUNSEL FOR PLAINTIFF

442134:1:ATLANTA

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT was served via CM/ECF on all attorneys of record.

This 29th day of March, 2018.

**STITES & HARBISON, PLLC**

*/s/ Brian J. Levy*

Paul G. Durdaller
Georgia Bar No. 234890
pdurdaller@stites.com
303 Peachtree Street, N.E.          Brian J. Levy
Suite 2800                          Georgia Bar No. 302518
Atlanta, Georgia 30308              blevy@stites.com
Telephone:   (404) 739-8800         COUNSEL FOR PLAINTIFF
Facsimile:   (404) 739-8870

9

442134:1:ATLANTA