IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRANCH BANKING AND
TRUST COMPANY,

      Plaintiff,

    v.

JOSEPH KOZAK,

      Defendant.

Civil Action File
No. 1:16-cv-02819-TWT

## DECLARATION OF DIANE SCHRAMM

I, Diane Schramm, declare under penalty of perjury as follows:

1. My name is Diane Schramm. I am over twenty-one (21) years of age, competent to make this Declaration, and all facts testified to herein are within my personal knowledge.

2. I am an Assistant Vice President for Plaintiff Branch Banking and Trust Company ("BB&T"). In this capacity, I am the bank officer assigned by BB&T to administer the loan that is the subject of the above-styled action.

3. I have custody and control of certain business records of BB&T, including those files concerning the loan that is the subject of the above-styled action, all documents attached to the Complaint for Damages (the "Complaint"), and all documents attached to this Declaration.

441887:2:ATLANTA

4.      I am personally familiar with how BB&T keeps its records.  I am also personally familiar with the loan documents at issue in this case and the amounts due and owing under the loan documents.

5.      On March 31, 2003, FK Dunwoody, LLC ("FK Dunwoody") executed and delivered to BB&T that certain Promissory Note of even date in the face amount of $383,000.00 ("Note 1").  A true and correct copy of Note 1 is attached hereto as Exhibit 1.

6.      In connection with the Note 1, BB&T disbursed loan proceeds to FK Dunwoody in the amount of $383,000.00 (the "Loan").

7.      Note 1 was guaranteed by that certain Guaranty Agreement executed by Defendant Joseph Kozak ("Kozak"), Marilyn Kozak, Robert Faught ("Faught"), and Melissa Faught.  A true and correct copy of the Guaranty Agreement is attached hereto as Exhibit 2.

8.      In 2010, Kozak and Faught agreed to execute a new promissory note for the same Loan in the capacity of principal obligors, along with FK Dunwoody, instead of serving as guarantors of the Loan.

9.      On September 23, 2010, Kozak, both in his capacity as member and manager of FK Dunwoody and in his individual capacity as a co-maker, executed and delivered to BB&T that certain counterpart of a Promissory Note of even date

2

in the face amount of $276,353.56 (the "Kozak Note 2 Counterpart").  A true and correct copy of the Kozak Note 2 Counterpart is attached hereto as Exhibit 3.

10.     Faught, both in his capacity as member and manager of FK Dunwoody, and in his individual capacity as a co-maker, executed and delivered to BB&T an identical counterpart of a Promissory Note dated September 23, 2010, in the face amount of $276,353.56 (the "Faught Note 2 Counterpart").  A true and correct copy of the Faught Note 2 Counterpart is attached hereto as Exhibit 4.

11.     The principal amount of $276,353.56 reflected in the Kozak Note 2 Counterpart and the Faught Note 2 Counterpart (collectively, "Note 2") referred to the then-outstanding principal balance owed on the Loan.  Note 2 pertains to the same Loan as Note 1.

12.     BB&T is the holder of Note 1, Note 2, and all documents executed in connection therewith or pursuant thereto (collectively, the "Loan Documents").

13.     Kozak, Faught, and FK Dunwoody defaulted under Note 2 by failing to pay the Loan in full upon the maturity of Note 2 on January 5, 2011.

14.     On May 24, 2011, Faught made a payment to BB&T in the amount of $75,000.00 (the "Faught Payment") to resolve his individual obligation to BB&T under the Loan Documents.  BB&T has been unable to locate a written settlement agreement with Faught.

441887:2:ATLANTA

15.     BB&T did not accept the Faught Payment in satisfaction of the Loan or intend for the Faught Payment to release Kozak from his obligation under Note 2. Entries in BB&T's Recovery Management System reflect that BB&T intended to recover the remaining amount owed on the Loan following the Faught Payment. True and correct copies of printouts from the Recovery Management System are attached hereto as Exhibit 5.  The Recovery Management System is kept in BB&T's course of regularly conducted business activity, and the making of such records are a regular practice of BB&T's business activity.  The entries in the Recovery Management System are made at or near the times of the transactions or actions to which they refer by or from information transmitted by a person with knowledge of such transactions or actions.

16.     By letter dated July 19, 2016, BB&T provided Notice of Default to Kozak as a result of Kozak's failure to repay the Loan in full upon the maturity of Note 2 and demanded the immediate payment of all amounts due and owing under the Loan Documents (the "Notice of Default").  The Notice of Default provided Kozak with ten (10) days from its receipt in which to pay all amounts owed under the Loan Documents without incurring liability for BB&T's attorneys' fees, pursuant to O.C.G.A. § 13-1-11.  A true and correct copy of the Notice of Default is attached hereto as Exhibit 6.

441887:2:ATLANTA

17.     As of the date of this Declaration, Kozak has not paid all amounts due and owing under Note 2.

18.     Attached hereto as Exhibit 7 is a true and correct printout of a Loan history beginning with the execution of Note 2 (the "Loan History").  The Loan History was kept in BB&T's course of regularly conducted business activity, and the making of such records are a regular practice of BB&T's business activity.  The entries in the Loan History were made at or near the times of the transactions or actions to which they refer by or from information transmitted by a person with knowledge of such transactions or actions.

19.     On April 15, 2011, BB&T placed the Loan on non-accrual status and waived the accrued interest for internal accounting purposes due to certain regulatory requirements.  As shown in the Loan History, as of April 15, 2011, the accrued interest on the loan was $6,462.60.  BB&T's decision to waive the accrued interest and place the Loan on non-accrual status for internal accounting purposes on April 15, 2011, does not affect the amount of interest Kozak owes on the Loan under the terms of Note 2.

20.     On May 31, 2011, BB&T fully charged off the Loan for internal accounting purposes due to certain regulatory requirements.  As shown in the Loan History, as of May 31, 2011, the following amounts were charged off:  principal

5

balance in the amount of $197,645.00, and late fees in the amount of $372.04. BB&T's decision to charge off the principal and late fees for internal accounting purposes on May 31, 2011, does not affect the outstanding balance of the Loan owed by Kozak under the terms of Note 2.

21.    Attached hereto as Exhibit 8 is a Business Loan Recovery – Payoff Quote (the "Payoff Quote").  The Payoff Quote is computed based on the terms of Note 2 and BB&T's account records, which show no payments were made on Note 2 since May 24, 2011.  BB&T's account records are kept in the regularly conducted activity of BB&T and the making of such records is a regular practice of BB&T's business activity.  The entries in the account records were made at or near the times of the transactions or actions to which they refer by or from information transmitted by a person with knowledge of such transactions or actions.

22.    Note 2 provides for a variable interest rate of the Bank's Prime Rate plus 2.50% per annum, subject to a fixed minimum rate of 6.50%.  Note 2 further provides that all interest is computed and charged for the actual number of days elapsed on the basis of a year consisting of three hundred sixty (360) days.  The payoff calculations used for the Complaint mistakenly calculated the accrued interest and *per diem* interest based on a 365-day year, instead of a 360-day year.

6

23.    Attached as Exhibit 9 are true and correct copies of email notices to BB&T employees of the changes to the Bank's Prime Rate effective between March 15, 2017, and the present (the "Rate Change Emails").  The Rate Change Emails are kept in BB&T's course of regularly conducted business activity, and the making of such records are a regular practice of BB&T's business activity.  The Rate Change Emails were made at or near the times of the transactions or actions to which they refer by or from information transmitted by a person with knowledge of such transactions or actions.

24.    From January 5, 2011, through June 13, 2017, interest accrued on the Loan at the fixed minimum rate of 6.50% per annum because the Note 2 interest rate was less than or equal to 6.50%.

25.    For the period from June 14, 2017, through the present, the Bank's Prime Rate, and the Note 2 interest rate, have been set as follows:

| Date of Rate Change | Bank's Prime Rate | Note 2 Interest Rate (Bank's Prime Rate plus 2.50% per annum) |
|---|---|---|
| 06/14/2017 | 4.25% | 6.75% |
| 12/13/2017 | 4.50% | 7.00% |
| 03/21/2018 | 4.75% | 7.25% |

26.    As of March 29, 2018, the following amounts are owed on Note 2, exclusive of statutory attorneys' fees:   principal balance in the amount of

7

$197,645.00; accrued interest in the amount of $96,648.95; *per diem* interest after March 28, 2018, and through judgment in the amount of $39.80; and fees in the amount of $372.04.

27. BB&T prepared the Payoff Quote in order to calculate the amount owed under Note 2 after the Loan was placed on non-accrual status because BB&T's computerized loan system will not allow it to add running interest after the Loan was placed on non-accrual status.

28. I understand that Georgia law construes "reasonable attorneys' fees" as "15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00." As of March 29, 2018, BB&T's reasonable attorneys' fees equaled $29,454.40 (($197,645.00 principal + $96,648.95 interest - $500.00) x 0.10 + $500.00 x 0.15). Such reasonable attorneys' fees continue to accrue through judgment along with the *per diem* interest in the amount of $3.98 per day.

[SIGNATURE APPEARS ON THE FOLLOWING PAGE.]

8

441887:2:ATLANTA

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 29 day of March, 2018.

DIANE SCHRAMM

9

# EXHIBIT 1

Borrower: FK DUNWOODY, LLC

Account Number: ▮▮▮▮1238 NOTE #1__     **BB&T**     Note Number: 00001

Address: 1432 Dunwoody Village ____                Dunwoody _____, Georgia

                                                  Date: March 31__, 2003_____

## PROMISSORY NOTE

THE UNDERSIGNED REPRESENTS THAT THE LOAN EVIDENCED HEREBY IS BEING OBTAINED FOR BUSINESS/COMMERCIAL OR AGRICULTURAL PURPOSES. For value received, the undersigned, jointly and severally, if more than one, promises to pay to **BRANCH BANKING AND TRUST COMPANY**, a North Carolina banking corporation (the "Bank"), or order, at any of Bank's offices in the above referenced city (or such other place or places that may be hereafter designated by Bank), the sum of THREE HUNDRED EIGHTY-THREE THOUSAND AND NO/100 _____ Dollars (S383,000.00_____) in immediately available coin or currency of the United States of America.

☐    Borrower shall pay a prepayment penalty as set forth in the Prepayment Penalty Addendum attached hereto.

**Interest shall accrue from the date hereof on the unpaid principal balance outstanding from time to time at the:**

☐    Fixed rate of _____% per annum.

☑    Variable rate of the Bank's Prime Rate plus 1.5__% per annum to be adjusted daily _____ as the Bank's Prime Rate changes. If checked here ☐, the interest rate will not exceed a(n) ☐ fixed ☐ average maximum rate of _____ or a ☐ floating maximum rate of the greater of _____% or the Bank's Prime Rate; and the interest rate will not decrease below a fixed minimum rate of _____%. If an average maximum rate is specified, a determination of any required reimbursement of interest by Bank will be made: ☐ when Note is repaid in full by Borrower ☐ annually beginning on _____.

☐    Fixed rate of _____% per annum through _____ which automatically converts on _____ to a variable rate equal to the Bank's Prime Rate plus _____% per annum which shall be adjusted _____ as such Prime Rate changes.

☐    _____

**Principal and Interest is payable as follows**

☐
☐
☐    Principal (plus any accrued interest not otherwise scheduled herein   )
Principal plus accrued interest   )   is due in full at maturity on March 31____, 2008.
Payable in consecutive 60___ installments of ☐ Principal   )

☑ Principal and Interest   commencing on April 30___, 2003_____ and continued on the same day of each calendar period thereafter, in 59___ equal payments of $3,336.34_____, with one final payment of all remaining principal and accrued interest due on March 31___, 2008_____.

☐    Choice Line Payment Option: 2% of outstanding balance is payable monthly commencing on _____ and continuing on the same day of each calendar period thereafter, with one final payment of all remaining principal and accrued interest due on _____.

☐    Accrued interest is payable _____ commencing on _____ and continuing on the same day of each calendar period thereafter, with one final payment of all remaining interest due on _____.

☐    Bank reserves the right in its sole discretion to adjust the fixed payment due hereunder _____ on _____ and continuing on the same day of each calendar period thereafter, in order to maintain an amortization period of no more than _____ months from the date of this Note. Borrower understands the payment may increase if interest rates increase.

☐    Prior to an event of default, Borrower may borrow, repay, and reborrow hereunder pursuant to the terms of the Loan Agreement, hereinafter defined.

☐

☐    Borrower hereby authorizes Bank to automatically debit from its demand, deposit, or savings account(s) with Bank, any payment(s) due under this Note on the date(s) due.

The undersigned shall pay to Bank a late fee in the amount of five percent (5%) of any installment past due for ten (10) or more days. When any installment payment is past due for fifteen (15) or more days, subsequent payments shall first be applied to the past due balance. In addition, the undersigned shall pay to Bank a returned payment fee if the undersigned or any other obligor hereon makes any payment at any time by check or other instrument, or by any electronic means, which is returned to Bank because of nonpayment due to insufficient funds.

All interest shall be computed and charged for the actual number of days elapsed on the basis of a year consisting of three hundred sixty (360) days. In the event periodic accruals of interest shall exceed any periodic fixed payment amount described above, the fixed payment amount shall be immediately increased, or additional supplemental interest payments required on the same periodic basis as specified above (increased fixed payments or supplemental payments to be determined in the Bank's sole discretion), in such amounts and at such times as shall be necessary to pay all accruals of interest for the period and all accruals of unpaid interest from previous periods. Such adjustments to the fixed payment amount or supplemental payments shall remain in effect for so long as the interest accruals shall exceed the original fixed payment amount and shall be further adjusted upward or downward to reflect changes in the variable interest rate. In no event shall the fixed payment amount be reduced below the original fixed payment amount specified above.

This note ("NOTE") is given by the undersigned in connection with the following agreements (if any) between the undersigned and the Bank:

Security Deed granted in favor of Bank as grantee:

☒    dated March 31____, 2003_____ in the maximum principal amount of $383,000.00 _____

     granted by FK Dunwoody, LLC_____

☒    dated March 31_____, 2003_____ in the maximum principal amount of $383,000.00 _____

     granted by Melissa Faught _____



PLAINTIFF'S EXHIBIT
3
Kozak
PENGAD 800-631-6989

BBT0011

(Page 2 of 6)

Security Agreement(s) granting a security interest to Bank:

☒   dated March 31____, 2003_____ given by FK Dunwoody, LLC _____

_____

☐   dated _____ given by _____

_____

☐   Securities Account Pledge and Security Agreement dated _____, executed by

_____

☐   Control Agreement(s) dated _____, covering   ☐ Deposit Account(s)      ☐ Investment Property
                                                        ☐ Letter of Credit Rights    ☐ Electronic Chattel Paper

☐   Assignment of Certificate of Deposit, Security Agreement, and Power of Attorney (for Certificated Certificates of Deposit) dated _____, executed by _____

☐   Pledge and Security Agreement for Publicly Traded Certificated Securities dated _____.
     executed by _____

☐   Assignment of Life Insurance Policy as Collateral dated _____, executed by _____

☒   Loan Agreement dated March _31_, 2003_____, executed by Borrower and ☒ Guarantor(s).

☐   _____

All of the terms, conditions and covenants of the above described agreements (the "Agreements") are expressly made a part of this Note by reference in the same manner and with the same effect as if set forth herein at length and any holder of this Note is entitled to the benefits of and remedies provided in the Agreements and any other agreements by and between the undersigned and the Bank.

No delay or omission on the part of the holder in exercising any right hereunder shall operate as a waiver of such right or of any other right of such holder, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same or of any other right on any future occasion. Every one of the undersigned and every endorser or guarantor of this note regardless of the time, order or place of signing waives presentment, demand, protest and notices of every kind and assents to any one or more extensions or postponements of the time of payment or any other indulgences, to any substitutions, exchanges or releases of collateral if at any time there be available to the holder collateral for this note, and to the additions or releases of any other parties or persons primarily or secondarily liable.

The failure to pay any part of the principal or interest when due on this Note or to fully perform any covenant, obligation or warranty on this or on any other liability to the Bank by any one or more of the undersigned, by any affiliate of the undersigned (as defined in 11 USC Section (101) (2)) or by any guarantor or surety of this Note (said affiliate, guarantor, and surety are herein called Obligor); or if any financial statement or other representation made to the Bank by any of the undersigned or any Obligor shall be found to be materially incorrect or incomplete; or in the event the default pursuant to any of the Agreements or any other obligation of any of the undersigned or any Obligor in favor of the Bank; or in the event the Bank demands that the undersigned secure or provide additional security for its obligations under this Note and security deemed adequate and sufficient by the Bank is not given when demanded; or in the event one or more of the undersigned or any Obligor shall die, terminate its existence, allow the appointment of a receiver for any part of its property, make an assignment for the benefit of creditors, or where a proceeding under bankruptcy or insolvency laws is initiated by or against any of the undersigned or any Obligor; or in the event the Bank should otherwise deem itself, its security interest, or any collateral unsafe or insecure; or should the Bank in good faith believe that the prospect of payment or other performance is impaired; or if there is an attachment, execution, or other judicial seizure of all or any portion of the Borrower's or any Obligor's assets, including an action or proceeding to seize any funds on deposit with the Bank, and such seizure is not discharged within 20 days; or if final judgment for the payment of money shall be rendered against the Borrower or any Obligor which is not covered by insurance and shall remain undischarged for a period of 30 days unless such judgment or execution thereon is effectively stayed; or the termination of any guaranty agreement given in connection with this Note, then any one of the same shall be a material default hereunder and this Note and other debts due the Bank by any one or more of undersigned shall immediately become due and payable without notice, at the option of the Bank. From and after any event of default hereunder, interest shall accrue on the sum of the principal balance and accrued interest then outstanding at the variable rate equal to the Bank's Prime Rate plus 5% per annum ("Default Rate"), provided that such rate shall not exceed at any time the highest rate of interest permitted by the laws of the State of Georgia; and further provided that such rate shall apply after judgement. In the event of any default, the then remaining unpaid principal amount and accrued but unpaid interest then outstanding shall bear interest at the Default Rate called for hereunder until such principal and interest have been paid in full. In addition, upon default, the Bank may pursue its full legal remedies at law or equity, and the balance due hereunder may be charged against any obligation of the Bank to any party including any Obligor. Bank shall not be obligated to accept any check, money order, or other payment instrument marked "payment In full" on any disputed amount due hereunder, and Bank expressly reserves the right to reject all such payment instruments. Borrower agrees that tender of its check or other payment Instrument so marked will not satisfy or discharge Its obligation under this Note, disputed or otherwise, even If such check or payment Instrument Is inadvertently processed by Bank unless In fact such payment Is in fact sufficient to pay the amount due hereunder.

The term "Prime Rate", if used herein, means the rate of interest per annum announced by the Bank from time to time and adopted as its Prime Rate. Bank lends at rates above and below the Prime Rate, and the Prime Rate is one of several rate indexes employed by the Bank when extending credit. Any change in the interest rate resulting from a change in the Bank's Prime Rate shall become effective as of the opening of business on the effective date of the change. If this Note is placed with an attorney for collection, the undersigned agrees to pay, in addition to principal and interest, all costs of collection and reasonable attorneys' fees. All obligations of the undersigned and of any Obligor shall bind his heirs, executors, administrators, successors, and/or assigns. Use of the masculine pronoun herein shall include the feminine and the neuter, and also the plural. If more than one party shall execute this Note, the term "undersigned" as used herein shall mean all the parties signing this Note and each of them, and

ACCOUNT#/NOTE#
▆▆▆▆1238/00001

BBT0012

all such parties shall be jointly and severally obligated hereunder. wherever possible, each provision of this Note shall be interpreted in such a manner to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or invalid under such law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note. All of the undersigned hereby waive all exemptions and homestead laws. The proceeds of the loan evidenced by this Note may be paid to any one or more of the undersigned.

From time to time, at the Bank's option, the maturity date of this Note may be extended, or this Note may be renewed in whole or in part, or a new note of different form any be substituted for this Note, or the rate of interest may be modified, or changes may be made in consideration of loan extensions, and the holder hereof, from time to time may waive or surrender, either in whole or in part any rights, guaranties, secured interest, or liens, given for the benefit of the holder in connection with the payment and the securing the payment of this Note; but no such occurrence shall in any manner affect, limit, modify, or otherwise impair any rights, guaranties or security of the holder not specifically waived, released, or surrendered in writing, nor shall the undersigned makers, or any guarantor, endorser, or any person who is or might be liable hereon, either primarily or contingently, be released from such event. The holder hereof, from time to time, shall have the unlimited right to release any person who might be liable hereon, and such release shall not affect or discharge the liability of any other person who is or might be liable hereon. No waivers and modifications shall be valid unless in writing and signed by the Bank. The Bank may, at its option, charge any fees for the modification, renewal, extension, or amendment of any of the terms of the Note permitted by applicable law. In case of a conflict between the terms of this Note and the Loan Agreement or Commitment Letter issued in connection herewith, the priority of controlling terms shall be first this Note, then the Loan Agreement, and then the Commitment Letter. This Note shall be governed by and construed in accordance with the laws of Georgia in connection with any foreclosure or enforcement proceeding undertaken in connection with the Borrower's property situated in Georgia. Time is of the essence of this Instrument.

Borrower agrees that the only interest charge is the interest actually stated in this Note, and that any loan or origination fee shall be deemed charges rather than interest, which charges are fully earned and non-refundable. It is further agreed that any late charges are not a charge for the use of money but are imposed to compensate Bank for some of the administrative services, costs and losses associated with any delinquency or default under this Note, and said charges shall be fully earned and non-refundable when accrued. All other charges imposed by Bank upon Borrower in connection with this Note and the loan including without limitation, any commitment fees, loan fees, facility fees, origination fees, discount points, default and late charges, prepayment fees, statutory attorney's fees and reimbursements for costs and expenses paid by Bank to third parties or for damages incurred by Bank are and shall be charges made to compensate Bank for underwriting and administrative services and costs, other services, and costs or losses incurred and to be incurred by Bank in connection with this Note and the loan shall under no circumstances be deemed to be charges for the use of money. All such charges shall be fully earned and non-refundable when due. This paragraph is executed for the purpose of clarifying the status of charges of the Loan for purpose of O.C.G.A. Sec. 7-4-2(a) and (a)(3).

It is the intention of Bank and Borrower to conform strictly to the usury laws now or hereafter in effect, and any interest payable hereunder shall be subject to reduction to the amount in excess of the maximum non-usurious amount allowed under applicable usury laws now or hereafter construed by courts having jurisdiction over such matters. If the maturity of this Note is accelerated by reason of any provision of this Note or by reason of voluntary prepayment by the undersigned, or otherwise, then earned interest may never include more than the maximum amount permitted by law, computed from the date of each advance of the loan proceeds hereunder until payment, and any interest in excess of the maximum amount permitted by law shall be cancelled automatically and, if paid, shall at the option of Bank, if allowed by a applicable law, either be rebated to Borrower or credited on the principal amount of this Note, or if all principal has heretofore been repaid, then the excess shall be rebated to Borrower

## CREDIT LIFE AND DISABILITY INSURANCE

Subject to certain underwriting criteria and limitations, INDIVIDUAL BORROWERS AND ADDITIONAL CO-MAKERS HAVE THE RIGHT TO REQUEST CREDIT LIFE AND DISABILITY INSURANCE PROTECTION FOR THIS LOAN. One or two Borrowers/Co-makers may be covered by BB&T Credit Life Insurance. and one Borrower/Co-maker may be covered by BB&T Credit Disability Insurance. However, the purchase of credit life and credit disability insurance from the Bank is not a condition of obtaining this loan.

I, the undersigned, desire the credit insurance with the cost and terms described below and promise to pay the premium of such insurance coverage. I understand that I may cancel this credit insurance at any time. I represent that, to the best of my knowledge, I am in good health and am insurable.

☐  Product 1 : Complete the following:  ☐  Fidelity Security Insurance Company Flex Plan
(Complete separate application)

| CREDIT LIFE INSURANCE | Effective Date | Term in Mos. | Amount Financed | Interest Rate | Credit Life Premium |
|---|---|---|---|---|---|
| ☐ Single  ☐ Level |  |  |  |  |  |
| ☐ Joint  ☐ Decreasing | _____ | _____ | $_____ | _____ | $_____ |

| CREDIT DISABILITY INSURANCE Effective Date and Terms in Mos. Same as Credit Life Insurance Above | Monthly Benefit Amount | Credit Disability Premium |
|---|---|---|
| _____ | $_____ | $_____ |

Credit Disability Insurance is subject to a 14-day elimination period and a 60-month maximum benefit period. Only the Borrower or Co-Maker who signs the first line under "Signature(s) of Insured" is covered by Credit Disability Insurance.

Date of Birth  Signature(s) of Insured  Total Credit Life and Disability Insurance Premium

_____  _____
Signature of Primary Insured

_____  _____  $_____
Signature of Secondary Insured

ACCOUNT#/NOTE#
95441591238/00001

BBT0013

(Page 4 of 6)

BB&T
PROMISSORY NOTE SIGNATURE PAGE

Borrower: FK DUNWOODY, LLC _____

Account Number: __954-1591238_____    Note Number: _00001_____

Note Amount: $383,000.00_____    Date: MARCH _31_, 2003 _____

Notice of Right to Copy of Appraisal: If a 1-4 family residential dwelling is pledged as collateral for this Note, you, the undersigned, have a right to a copy of the real estate appraisal report used in connection with your application for credit. If you wish to receive a copy, please notify in writing the branch office where you applied for credit. You must forward your request to the Bank no later than 90 days after the date of this Note. In your request letter, please provide your name, mailing address, appraised property address, the date of this Note, and the Account and Note Numbers shown on the front of this Note.

IN WITNESS WHEREOF, the undersigned, on the day and year first written above, has caused this note to be executed under seal.

If Borrower is a Corporation:

ATTEST:_____    _____
                                                      NAME OF CORPORATION

Title:_____    By:_____

                               Title:_____

    [CORPORATE SEAL]           By:_____

WITNESS:                        Title:_____

If Borrower is a Partnership, Limited Liability Company,
Limited Liability Limited Partnership, or Limited Liability Partnership:

                               FK DUNWOODY, LLC_____
WITNESS:                            NAME OF PARTNERSHIP, LLC, LLLP OR LLP

                               By:_____(SEAL)
                                      Joe Kozak, Co-Manager

                               By:_____(SEAL)
                                      Robert Faught, Co-Manager

                               By:_____(SEAL)
                                   GENERAL PARTNER/MANAGER/MEMBER

                               If Borrower is an Individual

WITNESS:

_____          _____(SEAL)

                               Additional Co-makers

WITNESS:

_____          _____(SEAL)

_____          _____(SEAL)

_____          _____(SEAL)

_____          _____(SEAL)

ACCOUNT#/NOTE#
954-1591238/00001

BBT0014

## RIDER TO PROMISSORY NOTE

1.(a) NOTICE AND RIGHT TO CURE WITH RESPECT TO NON-MONETARY DEFAULTS. Notwithstanding any provision in the Security Deed, Loan Agreement, Security Agreement, or Note or Documents to the contrary, in the event of a non-monetary default, Grantee's right, power and privilege to accelerate the maturity of the indebtedness secured hereby shall be 30 days from Grantor's receipt of written notice of such non-monetary default from Grantee.

(b) NOTICE AND RIGHT TO CURE WITH RESPECT TO MONETARY DEFAULTS. Notwithstanding any provision in the Security Deed to the contrary, in the event of a monetary default set forth in the Security Deed, the Note or other Documents, Grantor's right, power and privilege to accelerate the maturity of the Debt secured hereby shall be ten (10) days from notice by Grantee to Grantor of said monetary default.

(c) EXCEPTIONS TO MONETARY AND NON-MONETARY NOTICE AND RIGHT TO CURE. Notwithstanding anything contained in paragraphs 2(a) and (b) of this Rider, or the Security Deed, Loan Agreement, Security Agreement, Note or Documents, in no event shall notice and right to cure be granted for the following specific events of default:

(i) any Event of Default arising from any report, certificate, financial statement, or other document furnished prior to the execution of or pursuant to the terms of this Agreement, if same shall prove to be false or misleading in any material respect;

(ii) any Event of Default arising if a custodian shall be appointed for or take possession of any or all of the assets of the Grantor or any guarantor, or should the Grantor or any guarantor either voluntarily or involuntarily become subject to any insolvency proceeding, any proceeding to dissolve the Grantor or any guarantor, any proceeding to have a receiver appointed, or should the Grantor or any guarantor make an assignment for the benefit of creditors, or should there be an attachment, execution, or other judicial seizure of all or any portion of the Grantor's or any guarantor's assets, including an action or proceeding to seize any funds on deposit with Grantee;

(iii) any Event of Default arising if the Grantor or any guarantor shall become a debtor (as such term is defined in the U.S. Bankruptcy Code), whether voluntarily or involuntarily;

(iv) any Event of Default consisting of a failure to repay the debt at maturity;

(v) any Event of Default arising from Grantor commencing or having commenced against it the process of liquidation or dissolution of its charter, articles, agreement or other governing document, or if same is revoked; or if Grantor or any other obligor commences the process of dissolution or partition or if Grantor, or any guarantor (if a trust) commences the process of termination or expires;

(vi) any Event of Default arising from the institution of any proceeding seeking the forfeiture of the Property or any portion thereof or any interest therein as a result of any criminal or quasi-criminal activity by Grantor or any obligor, or any other person or entity so related to Grantor, obligors or the Property that the Property or any portion thereof or any interest therein might be forfeited on account of the activity or such person or entity; or

(vii) any Event of Default arising from the sale, conveyance, transfer or encumbrance of the Property or any part or interest therein, for real property collateral, and a bulk sale transfer to the extent that the indebtedness is secured by any personal or other tangible or intangible property, all without the prior written consent of Grantee, in its sole and absolute discretion; or

(viii) any Event of Default arising from the termination of any Guaranty by any guarantor, or the death of any guarantor.

2. ATTORNEYS' FEES. Notwithstanding any other provision in the Note, Security Deed, Loan Agreement, Security Agreement or other Document, all legal fees shall be based on the actual amount of time expended at the usual and customary hourly rates of attorneys and

BBT0015

paralegals for time actually spent without giving effect to any statutory presumptions that may then be in effect.

IN WITNESS WHEREOF, the undersigned, on this 31st day of March 2003, has caused this RIDER TO NOTE to be executed under seal.

FK DUNWOODY, LLC,
a Georgia limited liability company

By:_____
Joe Kozak, Co-Manager

By:_____
Robert Faught, Co-Manager

BBT0016

# EXHIBIT 2

# BB&T

## GUARANTY AGREEMENT

**BRANCH BANKING AND TRUST COMPANY**

**Dear Sirs:**

As an inducement to Branch Banking and Trust Company ("Bank") to extend credit to and to otherwise deal with FK DUNWOODY, LLC, a Georgia limited liability company ("Borrower"), and in consideration thereof, the undersigned (and each of the undersigned jointly an severally if more than one) hereby absolutely and unconditionally guarantees to Bank and its successors and assigns the due and punctual payment of any and all notes, drafts, debts, obligations and liabilities, primary or secondary (whether by way of endorsement or otherwise), of Borrower, at any time, now or hereafter, incurred with or held by Bank, together with interest, as and when the same become due and payable, whether by acceleration or otherwise, in accordance with the terms of any such notes, drafts, debts, obligations or liabilities or agreements evidencing any such indebtedness, obligation or liability including all renewals, extensions and modifications thereof. The obligation of the undersigned is a guarantee of payment and not of collection.

The undersigned is Bank's debtor for all indebtedness, obligations and liabilities for which this Guaranty is made, and Bank shall also at all times have a lien on and security interest in all stocks, bonds and other securities of the undersigned at any time in Bank's possession and the same shall at Bank's option be held, administered and disposed of as collateral to any such indebtedness, obligation or liability of the Borrower, and Bank shall also at all times have the right of set-off against any deposit account of the undersigned with Bank in the same manner and to the same extent that the right of set-off may exist against the Borrower.

It is understood that any such notes, drafts, debts, obligations and liabilities may be accepted or created by or with Bank at any time and from time to time without notice to the undersigned, and the undersigned hereby expressly waives presentment, demand, protest, and notice of dishonor of any such notes, drafts, debts, obligations and liabilities or other evidences of any such indebtedness, obligation or liability.

Bank may receive and accept from time to time any securities or other property as collateral to any such notes, drafts, debts, obligations and liabilities, and may surrender, compromise, exchange and release absolutely the same or any part thereof at any time without notice to the undersigned and without in any manner affecting the obligation and liability of the undersigned hereby created. The undersigned agrees that Bank shall have no obligation to protect, perfect, secure or insure any security interests, liens or encumbrances now or hereafter held for the indebtedness, obligations and liabilities for which this Guaranty is made.

If allowed by applicable law, the undersigned hereby subordinates any and all indebtedness of Borrower now or hereafter owed to the undersigned to all indebtedness of Borrower in favor of Bank, and agrees with Bank that the undersigned shall not demand or accept any payment of principal or interest from Borrower, shall not claim any offset or other reduction of the undersigned's obligations hereunder because of any such indebtedness and shall not take any action to obtain any of the security described in and encumbered by the documents evidencing the indebtedness owed by Borrower ("Loan Documents"); provided, however, that, if Bank so requests, such indebtedness shall be collected, enforced and received by the undersigned as trustee for Bank and shall be paid over to Bank on account of the indebtedness of Borrower to Bank, but without reducing or affecting any manner the liability of the undersigned under the other provisions of this Guaranty Agreement.

This obligation and liability on the part of the undersigned shall be a primary, and not a secondary, obligation and liability, payable immediately upon demand without recourse first having been had by Bank against the Borrower or any other guarantor, person, firm or corporation, and without first resorting to any property held by Bank as collateral security; and the undersigned hereby waives the benefits of all provisions of law, including but not limited to the provisions of O.C.G.A. section 10-7-24 or its successor, for stay or delay of execution or sale of property or other satisfaction of judgment against the undersigned on account of obligation and liability hereunder until judgment be obtained therefor against the Borrower and execution thereon returned unsatisfied, or until it is shown that the Borrower has no property available for the satisfaction of the indebtedness, obligation or liability guaranteed hereby, or until any other proceedings can be had; and the undersigned hereby agrees to indemnify the Bank for all costs of collection, including but not limited to the costs of repossession, foreclosure, reasonable attorneys' fees, and court costs incurred by the Bank in the event that the Bank should first be required by the undersigned to resort to any property held by the Bank or in which the Bank has a security interest or to obtain execution or other satisfaction of a judgment against the Borrower on account of Borrower's obligation and liability for its indebtedness guaranteed hereby; and the undersigned further agrees that the undersigned is responsible for any obligation or debt, or portion thereof, of the Borrower to the Bank which has been paid by the Borrower to the Bank and which the Bank is subsequently required to return to the Borrower or a trustee for the Borrower in any bankruptcy or insolvency proceeding; and the undersigned further agrees that none of the undersigned shall have any right of subrogation, reimbursement or indemnity whatsoever, nor any right of recourse to security for the debts and obligations of the Borrower to Bank unless and until all of the debts and obligations of the Borrower to Bank have been paid in full. The undersigned hereby waives, to the extent avoidable under any provision of the Bankruptcy Code, any right arising upon payment by the undersigned of any obligation under this Guaranty to assert a claim against the bankruptcy estate of the Borrower.

In addition to the other waivers set forth elsewhere in this Guaranty, the undersigned also hereby waives and agrees rot to assort or take advantage of (a) if allowed by applicable law, the defense of the statute of limitations in any



**PLAINTIFF'S EXHIBIT**
5
Kozak
PENGAD 800-631-6989

·(Page 2  of  6)

action hereunder or for the collection of the indebtedness or the performance of any obligation hereby guaranteed; (b) any defense that may arise by reason of the incapacity, lack of authority, death or disability of the undersigned, Borrower, or any other party or entity, or the failure of Bank to file or enforce a claim against the estate (either in administration, bankruptcy or any other proceeding) of Borrower or any other party or entity; (c) any defense based upon the failure of Bank to give notice of the existence, creation or incurring of any new or additional indebtedness or obligation or the failure of bank to give notice of any action or non-action on the part of any other party whomsoever, in connection with any obligation hereby guaranteed; d) any defense based upon an election of remedies by Bank which destroys or otherwise impairs any subrogation rights of the undersigned to proceed against Borrower for reimbursement, or both; (e) any defense based upon failure of Bank to commence an action against Borrower or any other guarantor of the indebtedness guaranteed hereby; (f) any duty of the part, of Bank to disclose to the undersigned any fact that it may know or hereafter know regarding Borrower; (g) acceptance or notice of acceptance of this Guaranty by Bank; h) as stated above, notice of presentment and demand for payment of any of the indebtedness or performance of any of the obligations hereby guaranteed except as otherwise required in this Guaranty; (i) as set forth above, protest and notice of dishonor or of default to the undersigned or to any other party with respect to the indebtedness or performance of obligations hereby guaranteed; (j) except as otherwise provided herein. any and all other notices whatsoever to which the undersigned might otherwise be entitled; k) any defense based on lack of due diligence by the Bank and the collection, protection or realization upon any collateral securing the indebtedness evidenced by the Note or any of the other Loan Documents, or both; (l) any transfer by Borrower of all or any part of the security encumbered by the Loan Documents; and (m) any other legal or equitable defenses whatsoever to which the undersigned might be entitled, to the extent permitted by law, unless such defenses are based upon the willful misconduct of the Bank.

In the event of the occurrence of a "Default" or "Event of Default" otherwise relating to the indebtedness evidenced by the Note(s) or evidenced or secured by any of the other Loan Documents or any of them, or relating to the transactions contemplated by the Loan Documents or any of them in any order, all rights powers and remedies available to Bank in such event shall be non-exclusive and cumulative of all other rights, powers and remedies provided thereunder or hereunder or by law or in equity. Accordingly, the undersigned hereby authorizes and empowers Bank upon the occurrence of Default or Event of Default under the Note(s) or Loan Documents, at its sole discretion, and, except as otherwise provided herein, without notice to the undersigned, to exercise and cause to be exercised any right or remedy which Bank may have, including, but not limited to, judicial foreclosure, non-judicial foreclosure by exercise of power of sale, acceptance of a deed or assignment in lieu of foreclosure, appointment of a receiver to collect rents and profits, exercise of remedies against personal property, or enforcement of any assignment of leases, rents, profits, accounts and certificates of deposit, or any other security, whether real, personal or tangible or intangible, at any public or private sale of any security or collateral for any indebtedness or any part hereof guaranteed hereby, whether by foreclosure or otherwise, Bank, may in its discretion, purchase all of any part of such security or collateral so sold or offered for sale for its own account and may apply against the amount bid therefor the balance due it due it pursuant to the Note(s) or any the other Loan Documents without prejudice to Bank's remedies hereunder against the undersigned for deficiencies, if allowed by applicable law. If the indebtedness guaranteed hereby is partially paid by reason of the election of Bank, its successors, endorsees or assigns, to pursue any of the remedies available to Bank or if such indebtedness is otherwise partially paid, then this Guaranty shall nevertheless remain in full force and effect, and the undersigned shall remain liable for the entire balance of the indebtedness guaranteed hereby, even though any rights which the undersigned may have against Borrower may be destroyed or diminished by the exercise of any such remedy.

Check applicable box:

☐  This Guaranty is unlimited and applies to all indebtedness of Borrower, whether now existing or hereafter arising.

☐  This Guaranty applies to all indebtedness of Borrower evidenced by its promissory note number _____ dated March 31,. 2003 (including all extensions, renewals, and additional advances and modifications thereof) in the initial principal amount of $383,000.00.

☐  This Guaranty is limited to an amount of $_____ plus accrued Interest, late fees, costs of collection and reasonable attorneys' fees and all other obligations and indebtedness which may accrue or be incurred with respect to the Borrower's indebtedness and obligations to Bank.

To secure the payment of all obligations of the undersigned hereunder, the undersigned hereby grants a security interest and lien in the following goods and property owned by the undersigned:_____
_____
_____
_____
_____("Collateral").

The undersigned hereby agrees to execute and deliver to Bank any security agreement, security deed, mortgage, UCC financing statement, or other document required by the Bank in order to protect its security interest or lien in the Collateral. This document shall constitute a security agreement under the Uniform Commercial Code of Georgia ("Code"), and in addition to having all other legal rights and remedies, the Bank shall have all rights and remedies of a secured party under the Code.

This agreement shall insure to the benefit of Bank, its successors and assigns, and the owners and holders of any of the indebtedness, obligations and liabilities hereby guaranteed, and shall remain in force until a written notice revoking it has been received by Bank; but such revocation shall not release the undersigned from liability to Bank, its successors and assigns, or the owners and holders of any of the indebtedness, obligations and liabilities hereby guaranteed, for any indebtedness, obligation or liability of the Borrower which is hereby guaranteed and then in existence

BBT0018

or from any renewals, additional advances, extensions or modifications thereof in whole or in part, whether such renewal, additional advances, extensions or modifications are made before or after such revocation, with or without notice to the undersigned. The undersigned waives presentment, demand, protest and notices of every kind and assents to any one or more extensions, modifications, additional advances, renewals or postponements of the time or amount of payment or any other indulgences given to Borrower. The undersigned shall be responsible for and shall reimburse the Bank for all costs and expenses and reasonable attorneys' fees incurred by the Bank in connection with the enforcement of this Guaranty or the protection or preservation of any right or claim of the Bank in connection herewith, including without limitation costs and expenses incurred by the Bank in connection with its attempts to collect the indebtedness, obligations, and liabilities guaranteed hereby. Time is of the essence of this Agreement.

If the Borrower is an organization, this instrument covers all indebtedness, obligations and liabilities to Bank purporting to be made or undertaken on behalf of such organization by any such officer or agent of said organization without regard to the actual authority of such officer or agent. The term "organization" shall include associations of all kinds and all purported corporations, partnership, limited liability companies and the like, whether correctly and legally chartered and organized.

The undersigned covenants, warrants, and represents to the Bank that, (i) this guaranty is enforceable against the undersigned in accordance with its terms; (ii) the execution and delivery of this Guaranty does not violate or constitute a breach of any agreement to which the undersigned is a party; (iii) that there is no litigation, claim, action or proceeding pending or, to the best knowledge of the undersigned, threatened against the undersigned which would materially adversely affect the financial condition of the undersigned or his ability to fulfill his obligations hereunder; and (iv) that the undersigned has knowledge of the Borrower's financial condition and affairs.

This Guaranty is made in and shall be construed in accordance with the laws and judicial decisions of the State of Georgia. The undersigned agrees that any dispute arising out of this Guaranty shall be adjudicated in either the state or federal courts of Georgia and in no other forum. For that purpose, the undersigned hereby submits to the jurisdiction of the state and/or federal courts of Georgia. The undersigned waives any defense that venue is not proper for any action brought in any federal or state court in the State of Georgia.

NOTICE. All notices, requests, demands, waivers, and other communications given as provided in this Guaranty will be in writing, and unless otherwise specifically provided in this Guaranty, will be deemed to have been given: (i) if delivered in person, upon delivery, or (ii) if mailed by certified or registered mail, postage prepaid, return receipt requested, and addressed to either Guarantor or Bank at the addresses provided below on the second business day after deposit in the United States Mail if addressed to an address located within a State other than the State in which the notice is being mailed, or (iii) if sent by overnight express delivery service, enclosed in a prepaid envelope and addressed to Bank or Guarantor at the address provided below, on the first business day after deposit with the service, or (iv) if sent by tested telex, telegram, telecopy, facsimile, or other form of rapid transmission confirmed by mailing (as provided in this section), at substantially the same time as the rapid transmission. Either Guarantor or Bank may change its respective address as provided in this section by giving written notice of the change as provided in this section. The addresses for notice are:

Notice to Guarantor:   Joe and Marilyn Kozak          With a copy to: _____
                       Robert and Melissa Faught                      _____
                       1432 Dunwoody Village                          _____
                       Dunwoody, GA 30338

Notice to Bank:   Branch Banking and Trust Company    With a copy to: Kirtan Patel
                  200 West Second Street                               Stites & Harbison
                  Winston-Salem, North Carolina 27101                  3350 Riverwood Parkway, Suite 1700
                                                                       Atlanta, GA 30339

Witness the signature and seal of each of the undersigned.

WITNESS  _B. Selfing_____          _Joseph Kozak_____ (SEAL)
                                        JOE KOZAK

         _____
         Address of Guarantor(s):

WITNESS
         _____
                                        _____ (SEAL)
         _____   MARILYN KOZAK
         Address of Guarantor(s):

WITNESS  _B. Selfin_____
                                        _Robert Faught_____ (SEAL)
         _____   ROBERT FAUGHT
         Address of Guarantor(s):       10430 Stanyan Street
                                        Alpharetta, GA

WITNESS

BBT0019

'(Page 4 'of 6)

or from any renewals, additional advances, extensions or modifications thereof in whole or in part, whether such renewal, additional advances, extensions or modifications are made before or after such revocation, with or without notice to the undersigned. The undersigned waives presentment, demand, protest and notices of every kind and assents to any one or more extensions, modifications, additional advances, renewals or postponements of the time or amount of payment or any other indulgences given to Borrower. The undersigned shall be responsible for and shall reimburse the Bank for all costs and expenses and reasonable attorneys' fees incurred by the Bank in connection with the enforcement of this Guaranty or the protection or preservation of any right or claim of the Bank in connection herewith, including without limitation costs and expenses incurred by the Bank in connection with its attempts to collect the indebtedness, obligations, and liabilities guaranteed hereby. Time is of the essence of this Agreement.

If the Borrower is an organization, this instrument covers all indebtedness, obligations and liabilities to Bank purporting to be made or undertaken on behalf of such organization by any such officer or agent of said organization without regard to the actual authority of such officer or agent. The term "organization" shall include associations of all kinds and all purported corporations, partnership, limited liability companies and the like, whether correctly and legally chartered and organized.

The undersigned covenants, warrants, and represents to the Bank that, (i) this guaranty is enforceable against the undersigned in accordance with its terms; (ii) the execution and delivery of this Guaranty does not violate or constitute a breach of any agreement to which the undersigned is a party; (iii) that there is no litigation, claim, action or proceeding pending or, to the best knowledge of the undersigned, threatened against the undersigned which would materially adversely affect the financial condition of the undersigned or his ability to fulfill his obligations hereunder; and (iv) that the undersigned has knowledge of the Borrower's financial condition and affairs.

This Guaranty is made in and shall be construed in accordance with the laws and judicial decisions of the State of Georgia. The undersigned agrees that any dispute arising out of this Guaranty shall be adjudicated in either the state or federal courts of Georgia and in no other forum. For that purpose, the undersigned hereby submits to the jurisdiction of the state and/or federal courts of Georgia. The undersigned waives any defense that venue is not proper for any action brought in any federal or state court in the State of Georgia.

NOTICE. All notices, requests, demands, waivers, and other communications given as provided in this Guaranty will be in writing, and unless otherwise specifically provided in this Guaranty, will be deemed to have been given: (i) if delivered in person, upon delivery, or (ii) if mailed by certified or registered mail, postage prepaid, return receipt requested, and addressed to either Guarantor or Bank at the addresses provided below on the second business day after deposit in the United States Mail if addressed to an address located within a State other than the State in which the notice is being mailed, or (iii) if sent by overnight express delivery service, enclosed in a prepaid envelope and addressed to Bank or Guarantor at the address provided below, on the first business day after deposit with the service, or (iv) if sent by tested telex, telegram, telecopy, facsimile, or other form of rapid transmission confirmed by mailing (as provided in this section), at substantially the same time as the rapid transmission. Either Guarantor or Bank may change its respective address as provided in this section by giving written notice of the change as provided in this section. The addresses for notice are:

Notice to Guarantor:   Joe and Marilyn Kozak       With a copy to: _____
                 Robert and Melissa Faught                  _____
                 1432 Dunwoody Village                     _____
                 Dunwoody, GA 30338

Notice to Bank:     Branch Banking and Trust Company   With a copy to: Kirtan Patel
                 200 West Second Street                    Stites & Harbison
                 Winston-Salem, North Carolina 27101        3350 Riverwood Parkway, Suite 1700
                                                                  Atlanta, GA 30339

Witness the signature and seal of each of the undersigned.

WITNESS

_____

_____
                                                             _____(SEAL)
                                                             JOE KOZAK

                 Address of Guarantor(s):
                                                            _____

WITNESS _____                                            _____

_____                                 _____(SEAL)
                                                               MARILYN KOZAK

                 Address of Guarantor(s):
                                                            _____

WITNESS

_____

_____                                 _____(SEAL)
                                                               ROBERT FAUGHT

                 Address of Guarantor(s):        10430 Stanyan Street
                                                               Alpharetta, GA

WITNESS

BBT0020

_____(SEAL)
MELISSA FAUGHT

Address of Guarantor(s):        10430 Stanyan Street
                                Alpharetta, GA

Signed. Sealed and delivered in the presence of:

_____        _____
Unofficial Witness               Notary Public

My Commission Expiration Date: _____

[NOTARY SEAL]

BBT0021

(Page 6 of 6)

_____      ᶰᵉˡⁱˢˢᵃ Faught(SEAL)
_____      MELISSA FAUGHT

Address of Guarantor(s):      10430 Stanyan Street
                              Alpharetta, GA

Signed, Sealed and delivered in the presence of:

_____      _____
Unofficial Witness                    Notary Public

My Commission Expiration Date: _1/20/05_      [NOTARIAL SEAL]

BBT0022

# EXHIBIT 3

(Page 1 of 4)

Borrower: FK DUNWOODY LLC, ROBERT K FAUGHT and JOSEPH KOZAK

Account Number: ▓▓▓▓1238

Address: 723 GOLF VISTA COURT

ALPHARETTA, GA 30004-3030

**BB&T**

Note Number: 00002

ATLANTA _____, Georgia

Date: September 23, 2010

## PROMISSORY NOTE

THE UNDERSIGNED REPRESENTS THAT THE LOAN EVIDENCED HEREBY IS BEING OBTAINED FOR BUSINESS/COMMERCIAL OR AGRICULTURAL PURPOSES. For value received, the undersigned, jointly and severally, if more than one, promises to pay to **BRANCH BANKING AND TRUST COMPANY**, a North Carolina banking corporation (the "Bank"), or order, at any of Bank's offices in the above referenced city (or such other place or places that may be hereafter designated by Bank), the sum of
TWO HUNDRED SEVENTY-SIX THOUSAND THREE HUNDRED FIFTY-THREE DOLLARS & 56/100

Dollars ($ 276,353.56 ), in immediately available coin or currency of the United States of America.

☐ Borrower shall pay a prepayment fee as set forth in the Prepayment Fee Addendum attached hereto.

Interest shall accrue from the date hereof on the unpaid balance outstanding from time to time at the:

☐ Fixed rate of _____ % per annum.

☒ Variable rate of the Bank's Prime Rate plus __2.500__ % per annum to be adjusted   Daily as the Bank's Prime Rate changes. If checked here ☒ , the interest rate will not exceed a(n) ☒ fixed ☐ average maximum rate of __20.000__ % or a ☐ floating maximum rate of the greater of _____ % or the Bank's Prime Rate; and the interest rate will not decrease below a fixed minimum rate of __6.500__ %. If an average maximum rate is specified, a determination of any required reimbursement of interest by Bank will be made: ☐ when Note is repaid in full by Borrower ☐ annually beginning on _____.

☐ Fixed rate of _____ % per annum through _____ which automatically converts on _____ to a variable rate equal to the Bank's Prime Rate plus _____ % per annum which shall be adjusted _____ as such Prime Rate changes.

☐ _____

**Principal and interest is payable as follows**

☐ Principal (plus any accrued interest not otherwise scheduled herein) } is due in full at maturity on _____

☐ Principal plus accrued interest

☒ Payable in consecutive __Monthly__ installments of ☐ Principal ☒ Principal and Interest } commencing on 11/05/2010 and continued on the same day of each calendar period thereafter, in __2__ equal payments of $ 3,720.31 , with one final payment of all remaining principal and accrued interest due on 01/05/2011 .

☐ ChoiceLine Payment Option: 2% of outstanding balance is payable monthly commencing on _____ and continuing on the same day of each calendar period thereafter, with one final payment of all remaining principal and accrued interest due on _____

☐ Accrued interest is payable _____ commencing on _____ and continuing on the same day of each calendar period thereafter, with one final payment of all remaining interest due on _____

☐ Bank reserves the right in its sole discretion to adjust the fixed payment due hereunder _____ on _____ and continuing on the same day of each calendar period thereafter, in order to maintain an amortization period of no more than _____ months from the date of the initial principal payment due hereunder. Borrower understands the payment may increase if interest rates increase.

☐ Prior to an event of default, Borrower may borrow, repay, and reborrow hereunder pursuant to the terms of the Loan Agreement, hereinafter defined.

☐ _____

☐ Borrower hereby authorizes Bank to automatically draft from its demand deposit or savings account(s) with Bank or other bank, any payment(s) due under this Note on the date(s) due. Borrower shall provide appropriate account number(s) for account(s) at Bank or other bank.

The undersigned shall pay to Bank a late fee in the amount of five percent (5%) of any installment past due for ten (10) or more days. When any installment payment is past due for ten (10) or more days, subsequent payments shall first be applied to the past due balance. In addition, the undersigned shall pay to Bank a returned payment fee if the undersigned or any other obligor hereon makes any payment at any time by check or other instrument, or by any electronic means, which is returned to Bank because of nonpayment due to nonsufficient funds.

All interest shall be computed and charged for the actual number of days elapsed on the basis of a year consisting of three hundred sixty (360) days. In the event periodic accruals of interest shall exceed any periodic fixed payment amount described above, the fixed payment amount shall be immediately increased, or additional supplemental interest payments required on the same periodic basis as specified above (increased fixed payments or supplemental payments to be determined in the Bank's sole discretion), in such amounts and at such times as shall be necessary to pay all accruals of interest for the period and all accruals of unpaid interest from previous periods. Such adjustments to the fixed payment amount or supplemental payments shall remain in effect for so long as the interest accruals shall exceed the original fixed payment amount and shall be further adjusted upward or downward to reflect changes in the variable interest rate. In no event shall the fixed payment amount be reduced below the original fixed payment amount specified above.

This note ("Note") is given by the undersigned in connection with the following agreements (if any) between the undersigned and the Bank:

Security Deed granted in favor of Bank as grantee:   *

☐ dated _____ in the maximum principal amount of $ _____

granted by _____

☐ dated _____ in the maximum principal amount of $ _____

granted by _____

ACCOUNT# / NOTE#

�▓▓▓1238   00002

1472GA (1004)

Page 1 of 4


PLAINTIFF'S EXHIBIT
6
Kozak
PENGAD 800-631-6989

BBT0067

(Page 2 of 4)

Security Agreement(s) granting a security interest to Bank:

☐ dated _____ given by _____

☐ dated _____ given by _____

☐ Securities Account Pledge and Security Agreement dated _____ , executed by _____

☐ Control Agreement(s) dated _____ , covering ☐ Deposit Account(s)    ☐ Investment Property
☐ Letter of Credit Rights    ☐ Electronic Chattel Paper

☐ Assignment of Certificate of Deposit, Security Agreement, and Power of Attorney (for Certificated Certificates of Deposit) dated _____
_____ , executed by _____

☐ Pledge and Security Agreement for Publicly Traded Certificated Securities dated _____ , executed by

☐ Assignment of Life Insurance Policy as Collateral dated _____ , executed by

☐ Loan Agreement dated _____ , executed by Borrower and ☐ Guarantor(s).

☐ _____

☐ _____

☐ _____

All of the terms, conditions and covenants of the above described agreements (the "Agreements") are expressly made a part of this Note by reference in the same manner and with the same effect as if set forth herein at length and any holder of this Note is entitled to the benefits of and remedies provided in the Agreements and any other agreements by and between the undersigned and the Bank. In addition to Bank's right of off-set and to any liens and security interests granted to Bank in the Agreements, the undersigned hereby grants to Bank a security interest in all of its depository accounts with and investment property held by Bank, which shall serve as collateral for the indebtedness and obligations evidenced by this Note.

No delay or omission on the part of the holder in exercising any right hereunder shall operate as a waiver of such right or of any other right of such holder, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same or of any other right on any future occasion. Every one of the undersigned and every endorser or guarantor of this Note regardless of the time, order or place of signing waives presentment, demand, protest and notices of every kind and assents to any one or more extensions or postponements of the time of payment or any other indulgences, to any substitutions, exchanges or releases of collateral if at any time there be available to the holder collateral for this Note, and to the additions or releases of any other parties or persons primarily or secondarily liable.

The failure to pay any part of the principal or interest when due on this Note or to fully perform any covenant, obligation or warranty on this or on any other liability to the Bank by any one or more of the undersigned, by any affiliate of the undersigned (as defined in 11USC Section (101) (2)), or by any guarantor or surety of this Note (said affiliate, guarantor, and surety are herein called Obligor); or if any financial statement or other representation made to the Bank by any of the undersigned or any Obligor shall be found to be materially incorrect or incomplete; or if any of the undersigned shall fail to furnish information to the Bank sufficient to verify the identity of the undersigned as required under the USA Patriot Act; or in the event of a default pursuant to any of the Agreements or any other obligation of any of the undersigned or any Obligor in favor of the Bank; or in the event the Bank demands that the undersigned secure or provide additional security for its obligations under this Note and security deemed adequate and sufficient by the Bank is not given when demanded; or in the event one or more of the undersigned or any Obligor shall die, terminate its existence, allow the appointment of a receiver for any part of its property, make an assignment for the benefit of creditors, or where a proceeding under bankruptcy or insolvency laws is initiated by or against any of the undersigned or any Obligor; or in the event the Bank should otherwise deem itself, its security interest, or any collateral unsafe or insecure; or should the Bank in good faith believe that the prospect of payment or other performance is impaired; or if there is an attachment, execution, or other judicial seizure of all or any portion of the Borrower's or any Obligor's assets, including an action or proceeding to seize any funds on deposit with the Bank, and such seizure is not discharged within 20 days; or if final judgment for the payment of money shall be rendered against the Borrower or any Obligor which is not covered by insurance or debt cancellation and shall remain undischarged for a period of 30 days unless such judgment or execution thereon is effectively stayed; or the termination of any guaranty agreement given in connection with this Note, then any one of the same shall be a material default hereunder and this Note and other debts due the Bank by any one or more of undersigned shall immediately become due and payable without notice, at the option of the Bank. From and after any event of default hereunder, interest shall accrue on the sum of the principal balance and accrued interest then outstanding at the variable rate equal to the Bank's Prime Rate plus 5% per annum ("Default Rate"), provided that such rate shall not exceed at any time the highest rate of interest permitted by the laws of the State of Georgia; and further provided that such rate shall apply after judgement. In the event of any default, the then remaining unpaid principal amount and accrued but unpaid interest then outstanding shall bear interest at the Default Rate called for hereunder until such principal and interest have been paid in full. In addition, upon default, the Bank may pursue its full legal remedies at law or equity, and the balance due hereunder may be charged against any obligation of the Bank to any party including any Obligor. **Bank shall not be obligated to accept any check, money order, or other payment instrument marked "payment in full" on any disputed amount due hereunder, and Bank expressly reserves the right to reject all such payment instruments. Borrower agrees that tender of its check or other payment instrument so marked will not satisfy or discharge its obligation under this Note, disputed or otherwise, even if such check or payment instrument is inadvertently processed by Bank unless in fact such payment is in fact sufficient to pay the amount due hereunder.**

1472GA (1004)                                                                                               Page 2 of 4

BBT0068

WAIVER OF TRIAL BY JURY. UNLESS EXPRESSLY PROHIBITED BY APPLICABLE LAW, THE UNDERSIGNED HEREBY WAIVE THE RIGHT TO TRIAL BY JURY OF ANY MATTERS OR CLAIMS ARISING OUT OF THIS NOTE OR ANY LOAN DOCUMENT EXECUTED IN CONNECTION HEREWITH OR OUT OF THE CONDUCT OF THE RELATIONSHIP BETWEEN THE UNDERSIGNED AND BANK. THIS PROVISION IS A MATERIAL INDUCEMENT FOR BANK TO MAKE THE LOAN EVIDENCED BY THIS NOTE. FURTHER, THE UNDERSIGNED HEREBY CERTIFY THAT NO REPRESENTATIVE OR AGENT OF BANK, NOR BANK'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT BANK WOULD NOT SEEK TO ENFORCE THIS WAIVER OR RIGHT TO JURY TRIAL PROVISION IN THE EVENT OF LITIGATION. NO REPRESENTATIVE OR AGENT OF BANK, NOR BANK'S COUNSEL, HAS THE AUTHORITY TO WAIVE, CONDITION OR MODIFY THIS PROVISION.

Unless otherwise required under a Loan Agreement, if applicable, and as long as any indebtedness evidenced by this Note remains outstanding or as long as Bank remains obligated to make advances, the undersigned shall furnish annually an updated financial statement in a form satisfactory to Bank, which, when delivered shall be the property of the Bank.

The term "Prime Rate," if used herein, means the rate of interest per annum announced by the Bank from time to time and adopted as its Prime Rate. Bank lends at rates above and below the Prime Rate, and the Prime Rate is one of several rate indexes employed by the Bank when extending credit. Any change in the interest rate resulting from a change in the Bank's Prime Rate shall become effective as of the opening of business on the effective date of the change. If this Note is placed with an attorney for collection, the undersigned agrees to pay, in addition to principal and interest, all costs of collection and reasonable attorneys' fees. All obligations of the undersigned and of any Obligor shall bind his heirs, executors, administrators, successors, and/or assigns. Use of the masculine pronoun herein shall include the feminine and the neuter, and also the plural. If more than one party shall execute this Note, the term "undersigned" as used herein shall mean all the parties signing this Note and each of them, and all such parties shall be jointly and severally obligated hereunder. Wherever possible, each provision of this Note shall be interpreted in such a manner to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or invalid under such law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note. All of the undersigned hereby waive all exemptions and homestead laws. The proceeds of the loan evidenced by this Note may be paid to any one or more of the undersigned.

From time to time, at the Bank's option, the maturity date of this Note may be extended, or this Note may be renewed in whole or in part, or a new note of different form may be substituted for this Note, or the rate of interest may be modified, or changes may be made in consideration of loan extensions, and the holder hereof, from time to time may waive or surrender, either in whole or in part any rights, guaranties, secured interest, or liens, given for the benefit of the holder in connection with the payment and the securing the payment of this Note; but no such occurrence shall in any manner affect, limit, modify, or otherwise impair any rights, guaranties or security of the holder not specifically waived, released, or surrendered in writing, nor shall the undersigned makers, or any guarantor, endorser, or any person who is or might be liable hereon, either primarily or contingently, be released from such event. The holder hereof, from time to time, shall have the unlimited right to release any person who might be liable hereon, and such release shall not affect or discharge the liability of any other person who is or might be liable hereon. No waivers and modifications shall be valid unless in writing and signed by the Bank. The Bank may, at its option, charge any fees for the modification, renewal, extension, or amendment of any of the terms of the Note permitted by applicable law. In case of a conflict between the terms of this Note and the Loan Agreement or Commitment Letter issued in connection herewith, the priority of controlling terms shall be first this Note, then the Loan Agreement, and then the Commitment Letter. This Note shall be governed by and construed in accordance with the laws of Georgia in connection with any foreclosure or enforcement proceeding undertaken in connection with the Borrower's property situated in Georgia. Time is of the essence of this Instrument.

Borrower agrees that the only interest charge is the interest actually stated in this Note, and that any loan or origination fee shall be deemed charges rather than interest, which charges are fully earned and non-refundable. It is further agreed that any late charges are not a charge for the use of money but are imposed to compensate Bank for some of the administrative services, costs and losses associated with any delinquency or default under this Note, and said charges shall be fully earned and non-refundable when accrued. All other charges imposed by Bank upon Borrower in connection with this Note and the loan including without limitation, any commitment fees, loan fees, facility fees, origination fees, discount points, default and late charges, prepayment fees, statutory attorney's fees and reimbursements for costs and expenses paid by Bank to third parties or for damages incurred by Bank are and shall be deemed to be charges made to compensate Bank for underwriting and administrative services and costs, other services, and costs or losses incurred and to be incurred by Bank in connection with this Note and the loan shall under no circumstances be deemed to be charges for the use of money. All such charges shall be fully earned and non-refundable when due. This paragraph is executed for the purpose of clarifying the status of charges of the Loan for purpose of O.C.G.A. Sec. 7-4-2(a) and (a)(3).

It is the intention of Bank and Borrower to conform strictly to the usury laws now or hereafter in effect, and any interest payable hereunder shall be subject to reduction to the amount in excess of the maximum non-usurious amount allowed under applicable usury laws now or hereafter construed by courts having jurisdiction over such matters. If the maturity of this Note is accelerated by reason of any provision of this Note or by reason of voluntary prepayment by the undersigned, or otherwise, then earned interest may never include more than the maximum amount permitted by law, computed from the date of each advance of the loan proceeds hereunder until payment, and any interest in excess of the maximum amount permitted by law shall be cancelled automatically and, if paid, shall at the option of Bank, if allowed by a applicable law, either be rebated to Borrower or credited on the principal amount of this Note, or if all principal has heretofor been repaid, then the excess shall be rebated to Borrower.

(SIGNATURES ON FOLLOWING PAGE)

BBT0069

(Page 4 of 4)

# BB&T

## PROMISSORY NOTE SIGNATURE PAGE

Borrower: FK DUNWOODY LLC

Account Number: ▮▮▮▮1238                          Note Number: _____00002_____

Note Amount: $ 276,353.56                         Date: __09/23/2010__

IN WITNESS WHEREOF, the undersigned, on the day and year first written above, has caused this Note to be executed under seal.

### If Borrower is a Corporation:

WITNESS:

_____        _____
                                         NAME OF CORPORATION

_____        By: _____ (SEAL)

                                         Title: _____

_____        By: _____ (SEAL)

                                         Title: _____

### If Borrower is a Partnership, Limited Liability Company, Limited Liability Partnership, or Limited Liability Limited Partnership:

WITNESS:                                 FK DUNWOODY LLC
                                         _____
_____        NAME OF PARTNERSHIP, LLC, LLP, OR LLLP

                                         By: _____ (SEAL)
                                             JOSEPH KOZAK
                                         Title: _____
                                             Member & Manager

                                         By: _____ (SEAL)
                                             ROBERT K FAUGHT
                                         Title: _____
                                             Member & Manager

                                         By: _____ (SEAL)

                                         Title: _____

### If Borrower is an Individual:

WITNESS:

_____        _____ (SEAL)
                                             ROBERT K FAUGHT

### Additional Co-makers:

WITNESS:

_____        _____ (SEAL)
                                             JOSEPH KOZAK

_____        _____ (SEAL)

_____        _____ (SEAL)

_____        _____ (SEAL)

1472GA (1004)                                                    Page 4 of 4

BBT0070

# EXHIBIT 4

(Page 1 of 4)

Borrower: FK DUNWOODY LLC, ROBERT K FAUGHT and JOSEPH KOZAK

Account Number: ▓▓▓1238

Address: 723 GOLF VISTA COURT
ALPHARETTA, GA 30004-3030

**BB&T**

Note Number: 00002

ATLANTA _____, Georgia

Date: September 23, 2010

## PROMISSORY NOTE

THE UNDERSIGNED REPRESENTS THAT THE LOAN EVIDENCED HEREBY IS BEING OBTAINED FOR BUSINESS/COMMERCIAL OR AGRICULTURAL PURPOSES. For value received, the undersigned, jointly and severally, if more than one, promises to pay to BRANCH BANKING AND TRUST COMPANY, a North Carolina banking corporation (the "Bank"), or order, at any of Bank's offices in the above referenced city (or such other place or places that may be hereafter designated by Bank), the sum of
TWO HUNDRED SEVENTY-SIX THOUSAND THREE HUNDRED FIFTY-THREE DOLLARS & 56/100

Dollars ($ 276,353.56 ), in immediately available coin or currency of the United States of America.

☐ Borrower shall pay a prepayment fee as set forth in the Prepayment Fee Addendum attached hereto.

Interest shall accrue from the date hereof on the unpaid balance outstanding from time to time at the:
☐ Fixed rate of _____ % per annum.
☒ Variable rate of the Bank's Prime Rate plus __2.500__ % per annum to be adjusted __Daily__ as the Bank's Prime Rate changes. If checked here ☒ , the interest rate will not exceed a(n) ☒ fixed ☐ average maximum rate of __20.000__ % or a ☐ floating maximum rate of _____ % or the Bank's Prime Rate; and the interest rate will not decrease below a fixed minimum rate of __6.500__ %. If an average maximum rate is specified, a determination of any required reimbursement of interest by Bank will be made: ☐ when Note is repaid in full by Borrower ☐ annually beginning on _____ .
☐ Fixed rate of _____ % per annum through _____ which automatically converts on _____ to a variable rate equal to the Bank's Prime Rate plus _____ % per annum which shall be adjusted _____ as such Prime Rate changes.

☐ _____ .

**Principal and interest is payable as follows**
☐ Principal (plus any accrued interest not otherwise scheduled herein) ⎫
☐ Principal plus accrued interest ⎬ is due in full at maturity on _____ .
☒ Payable in consecutive __Monthly__ installments of ☐ Principal ⎫ ☒ Principal and Interest ⎬ commencing on 11/05/2010 and continued on the same day of each calendar period thereafter, in __2__ equal payments of $ _3,720.31_ , with one final payment of all remaining principal and accrued interest due on __01/05/2011__ .
☐ ChoiceLine Payment Option: 2% of outstanding balance is payable monthly commencing on _____ and continuing on the same day of each calendar period thereafter, with one final payment of all remaining principal and accrued interest due on _____ .
☐ Accrued interest is payable _____ commencing on _____ and continuing on the same day of each calendar period thereafter, with one final payment of all remaining interest due on _____ .
☐ Bank reserves the right in its sole discretion to adjust the fixed payment due hereunder _____ on _____ and continuing on the same day of each calendar period thereafter, in order to maintain an amortization period of no more than _____ months from the date of the initial principal payment due hereunder. Borrower understands the payment may increase if interest rates increase.
☐ Prior to an event of default, Borrower may borrow, repay, and reborrow hereunder pursuant to the terms of the Loan Agreement, hereinafter defined.

☐ _____ .
☐ Borrower hereby authorizes Bank to automatically draft from its demand deposit or savings account(s) with Bank or other bank, any payment(s) due under this Note on the date(s) due. Borrower shall provide appropriate account number(s) for account(s) at Bank or other bank.

The undersigned shall pay to Bank a late fee in the amount of five percent (5%) of any installment past due for ten (10) or more days. When any installment payment is past due for ten (10) or more days, subsequent payments shall first be applied to the past due balance. In addition, the undersigned shall pay to Bank a returned payment fee if the undersigned or any other obligor hereon makes any payment at any time by check or other instrument, or by any electronic means, which is returned to Bank because of nonpayment due to nonsufficient funds.
All interest shall be computed and charged for the actual number of days elapsed on the basis of a year consisting of three hundred sixty (360) days. In the event periodic accruals of interest shall exceed any periodic fixed payment amount described above, the fixed payment amount shall be immediately increased, or additional supplemental interest payments required on the same periodic basis as specified above (increased fixed payments or supplemental payments to be determined in the Bank's sole discretion), in such amounts and at such times as shall be necessary to pay all accruals of interest for the period and all accruals of unpaid interest from previous periods. Such adjustments to the fixed payment amount or supplemental payments shall remain in effect for so long as the interest accruals shall exceed the original fixed payment amount and shall be further adjusted upward or downward to reflect changes in the variable interest rate. In no event shall the fixed payment amount be reduced below the original fixed payment amount specified above.

This note ("Note") is given by the undersigned in connection with the following agreements (if any) between the undersigned and the Bank:

Security Deed granted in favor of Bank as grantee:

☐ dated _____ in the maximum principal amount of $ _____
granted by _____
☐ dated _____ in the maximum principal amount of $ _____
granted by _____

*ACCOUNT# / NOTE#*
▓▓▓1238    00002
**1472GA** (1004)



Page 1 of 4

BBT0097

(Page 2 of 4)

Security Agreement(s) granting a security interest to Bank:

☐ dated _____ given by _____

_____

☐ dated _____ given by _____

_____

☐ Securities Account Pledge and Security Agreement dated _____ , executed by

_____

☐ Control Agreement(s) dated _____ , covering ☐ Deposit Account(s)    ☐ Investment Property

☐ Letter of Credit Rights    ☐ Electronic Chattel Paper

☐ Assignment of Certificate of Deposit, Security Agreement, and Power of Attorney (for Certificated Certificates of Deposit) dated _____

_____ , executed by _____

_____

☐ Pledge and Security Agreement for Publicly Traded Certificated Securities dated _____ , executed by

_____

☐ Assignment of Life Insurance Policy as Collateral dated _____ , executed by

_____

☐ Loan Agreement dated _____ , executed by Borrower and ☐ Guarantor(s).

☐ _____

☐ _____

☐ _____

All of the terms, conditions and covenants of the above described agreements (the "Agreements") are expressly made a part of this Note by reference in the same manner and with the same effect as if set forth herein at length and any holder of this Note is entitled to the benefits of and remedies provided in the Agreements and any other agreements by and between the undersigned and the Bank. In addition to Bank's right of off-set and to any liens and security interests granted to Bank in the Agreements, the undersigned hereby grants to Bank a security interest in all of its depository accounts with and investment property held by Bank, which shall serve as collateral for the indebtedness and obligations evidenced by this Note.

No delay or omission on the part of the holder in exercising any right hereunder shall operate as a waiver of such right or of any other right of such holder, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same or of any other right on any future occasion. Every one of the undersigned and every endorser or guarantor of this Note regardless of the time, order or place of signing waives presentment, demand, protest and notices of every kind and assents to any one or more extensions or postponements of the time of payment or any other indulgences, to any substitutions, exchanges or releases of collateral if at any time there be available to the holder collateral for this Note, and to the additions or releases of any other parties or persons primarily or secondarily liable.

The failure to pay any part of the principal or interest when due on this Note or to fully perform any covenant, obligation or warranty on this or on any other liability to the Bank by any one or more of the undersigned, by any affiliate of the undersigned (as defined in 11USC Section (101) (2)), or by any guarantor or surety of this Note (said affiliate, guarantor, and surety are herein called Obligor); or if any financial statement or other representation made to the Bank by any of the undersigned or any Obligor shall be found to be materially incorrect or incomplete; or if any of the undersigned shall fail to furnish information to the Bank sufficient to verify the identity of the undersigned as required under the USA Patriot Act; or in the event of a default pursuant to any of the Agreements or any other obligation of any of the undersigned or any Obligor in favor of the Bank; or in the event the Bank demands that the undersigned secure or provide additional security for its obligations under this Note and security deemed adequate and sufficient by the Bank is not given when demanded; or in the event one or more of the undersigned or any Obligor shall die, terminate its existence, allow the appointment of a receiver for any part of its property, make an assignment for the benefit of creditors, or where a proceeding under bankruptcy or insolvency laws is initiated by or against any of the undersigned or any Obligor; or in the event the Bank should otherwise deem itself, its security interest, or any collateral unsafe or insecure; or should the Bank in good faith believe that the prospect of payment or other performance is impaired; or if there is an attachment, execution, or other judicial seizure of all or any portion of the Borrower's or any Obligor's assets, including an action or proceeding to seize any funds on deposit with the Bank, and such seizure is not discharged within 20 days; or if final judgment for the payment of money shall be rendered against the Borrower or any Obligor which is not covered by insurance or debt cancellation and shall remain undischarged for a period of 30 days unless such judgment or execution thereon is effectively stayed; or the termination of any guaranty agreement given in connection with this Note, then any one of the same shall be a material default hereunder and this Note and other debts due the Bank by any one or more of undersigned shall immediately become due and payable without notice, at the option of the Bank. From and after any event of default hereunder, interest shall accrue on the sum of the principal balance and accrued interest then outstanding at the variable rate equal to the Bank's Prime Rate plus 5% per annum ("Default Rate"), provided that such rate shall not exceed at any time the highest rate of interest permitted by the laws of the State of Georgia; and further provided that such rate shall apply after judgement. In the event of any default, the then remaining unpaid principal amount and accrued but unpaid interest then outstanding shall bear interest at the Default Rate called for hereunder until such principal and interest have been paid in full. In addition, upon default, the Bank may pursue its full legal remedies at law or equity, and the balance due hereunder may be charged against any obligation of the Bank to any party including any Obligor. Bank shall not be obligated to accept any check, money order, or other payment instrument marked "payment in full" on any disputed amount due hereunder, and Bank expressly reserves the right to reject all such payment instruments. Borrower agrees that tender of its check or other payment instrument so marked will not satisfy or discharge its obligation under this Note, disputed or otherwise, even if such check or payment instrument is inadvertently processed by Bank unless in fact such payment is in fact sufficient to pay the amount due hereunder.

1472GA (1004)

Page 2 of 4

BBT0098

WAIVER OF TRIAL BY JURY. UNLESS EXPRESSLY PROHIBITED BY APPLICABLE LAW, THE UNDERSIGNED HEREBY WAIVE THE RIGHT TO TRIAL BY JURY OF ANY MATTERS OR CLAIMS ARISING OUT OF THIS NOTE OR ANY LOAN DOCUMENT EXECUTED IN CONNECTION HEREWITH OR OUT OF THE CONDUCT OF THE RELATIONSHIP BETWEEN THE UNDERSIGNED AND BANK. THIS PROVISION IS A MATERIAL INDUCEMENT FOR BANK TO MAKE THE LOAN EVIDENCED BY THIS NOTE. FURTHER, THE UNDERSIGNED HEREBY CERTIFY THAT NO REPRESENTATIVE OR AGENT OF BANK, NOR BANK'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT BANK WOULD NOT SEEK TO ENFORCE THIS WAIVER OR RIGHT TO JURY TRIAL PROVISION IN THE EVENT OF LITIGATION. NO REPRESENTATIVE OR AGENT OF BANK, NOR BANK'S COUNSEL, HAS THE AUTHORITY TO WAIVE, CONDITION OR MODIFY THIS PROVISION.

Unless otherwise required under a Loan Agreement, if applicable, and as long as any indebtedness evidenced by this Note remains outstanding or as long as Bank remains obligated to make advances, the undersigned shall furnish annually an updated financial statement in a form satisfactory to Bank, which, when delivered shall be the property of the Bank.

The term "Prime Rate," if used herein, means the rate of interest per annum announced by the Bank from time to time and adopted as its Prime Rate. Bank lends at rates above and below the Prime Rate, and the Prime Rate is one of several rate indexes employed by the Bank when extending credit. Any change in the interest rate resulting from a change in the Bank's Prime Rate shall become effective as of the opening of business on the effective date of the change. If this Note is placed with an attorney for collection, the undersigned agrees to pay, in addition to principal and interest, all costs of collection and reasonable attorneys' fees. All obligations of the undersigned and of any Obligor shall bind his heirs, executors, administrators, successors, and/or assigns. Use of the masculine pronoun herein shall include the feminine and the neuter, and also the plural. If more than one party shall execute this Note, the term "undersigned" as used herein shall mean all the parties signing this Note and each of them, and all such parties shall be jointly and severally obligated hereunder. Wherever possible, each provision of this Note shall be interpreted in such a manner to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or invalid under such law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note. All of the undersigned hereby waive all exemptions and homestead laws. The proceeds of the loan evidenced by this Note may be paid to any one or more of the undersigned.

From time to time, at the Bank's option, the maturity date of this Note may be extended, or this Note may be renewed in whole or in part, or a new note of different form may be substituted for this Note, or the rate of interest may be modified, or changes may be made in consideration of loan extensions, and the holder hereof, from time to time may waive or surrender, either in whole or in part any rights, guaranties, secured interest, or liens, given for the benefit of the holder in connection with the payment and the securing the payment of this Note; but no such occurrence shall in any manner affect, limit, modify, or otherwise impair any rights, guaranties or security of the holder not specifically waived, released, or surrendered in writing, nor shall the undersigned makers, or any guarantor, endorser, or any person who is or might be liable hereon, either primarily or contingently, be released from such event. The holder hereof, from time to time, shall have the unlimited right to release any person who might be liable hereon, and such release shall not affect or discharge the liability of any other person who is or might be liable hereon. No waivers and modifications shall be valid unless in writing and signed by the Bank. The Bank may, at its option, charge any fees for the modification, renewal, extension, or amendment of any of the terms of the Note permitted by applicable law. In case of a conflict between the terms of this Note and the Loan Agreement or Commitment Letter issued in connection herewith, the priority of controlling terms shall be first this Note, then the Loan Agreement, and then the Commitment Letter. This Note shall be governed by and construed in accordance with the laws of Georgia in connection with any foreclosure or enforcement proceeding undertaken in connection with the Borrower's property situated in Georgia. Time is of the essence of this instrument.

Borrower agrees that the only interest charge is the interest actually stated in this Note, and that any loan or origination fee shall be deemed charges rather than interest, which charges are fully earned and non-refundable. It is further agreed that any late charges are not a charge for the use of money but are imposed to compensate Bank for some of the administrative services, costs and losses associated with any delinquency or default under this Note, and said charges shall be fully earned and non-refundable when accrued. All other charges imposed by Bank upon Borrower in connection with this Note and the loan including without limitation, any commitment fees, loan fees, facility fees, origination fees, discount points, default and late charges, prepayment fees, statutory attorney's fees and reimbursements for costs and expenses paid by Bank to third parties or for damages incurred by Bank are and shall be deemed to be charges made to compensate Bank for underwriting and administrative services and costs, other services, and costs or losses incurred and to be incurred by Bank in connection with this Note and the loan shall under no circumstances be deemed to be charges for the use of money. All such charges shall be fully earned and non-refundable when due. This paragraph is executed for the purpose of clarifying the status of charges of the Loan for purpose of O.C.G.A. Sec. 7-4-2(a) and (a)(3).

It is the intention of Bank and Borrower to conform strictly to the usury laws now or hereafter in effect, and any interest payable hereunder shall be subject to reduction to the amount in excess of the maximum non-usurious amount allowed under applicable usury laws now or hereafter construed by courts having jurisdiction over such matters. If the maturity of this Note is accelerated by reason of any provision of this Note or by reason of voluntary prepayment by the undersigned, or otherwise, then earned interest may never include more than the maximum amount permitted by law, computed from the date of each advance of the loan proceeds hereunder until payment, and any interest in excess of the maximum amount permitted by law shall be cancelled automatically and, if paid, shall at the option of Bank, if allowed by a applicable law, either be rebated to Borrower or credited on the principal amount of this Note, or if all principal has heretofor been repaid, then the excess shall be rebated to Borrower.

(SIGNATURES ON FOLLOWING PAGE)

1472GA (10/04)                                                                                                          Page 3 of 4

BBT0099

(Page 4 of 4)

# BB&T

## PROMISSORY NOTE SIGNATURE PAGE

Borrower: FK DUNWOODY, LLC

Account Number: ▓▓91238

Note Number: 00002

Note Amount: $ 276,353.56

Date: 09/23/2010

IN WITNESS WHEREOF, the undersigned, on the day and year first written above, has caused this Note to be executed under seal.

### If Borrower is a Corporation:

WITNESS:

_____
NAME OF CORPORATION

By: _____ (SEAL)

Title: _____

By: _____ (SEAL)

Title: _____

### If Borrower is a Partnership, Limited Liability Company, Limited Liability Partnership, or Limited Liability Limited Partnership:

WITNESS:

FK DUNWOODY, LLC
NAME OF PARTNERSHIP, LLC, LLP, OR LLLP

By: _____ (SEAL)
JOSEPH KOZAK

Title: Member & Manager

By: Robert K. Daugh (SEAL)
ROBERT K FAUGHT

Title: Member & Manager

By: _____ (SEAL)

Title: _____

### If Borrower is an Individual:

WITNESS:

Robert K. Daugh (SEAL)
ROBERT K FAUGHT

### Additional Co-makers:

WITNESS:

_____ (SEAL)
JOSEPH KOZAK

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

1472GA (1004)

Page 4 of 4

BBT0100

# EXHIBIT 5

```
R229-2      13:26:49        RECOVERY MANAGEMENT SYSTEM       D08148      10/04/1
ACTIVE      BBT1              View Full Screen Comment                   REL6.1.

Acct.:      [        ]12380002          Name.: FK DUNWOODY LLC

Tran.Cd..: From: __ TO: __
            DATE: 09/02/11   13:44:13 ID: B23527    TRAN: UA STAT: 500
            GAVE CHARGEOFF PACKAGE TO YVONNE TO WORK WITH ATTY
            DATE: 06/09/11   10:47:01 ID: B05242    TRAN: UA STAT: 011
            GIVING TO ANN FOR LEGAL REVIEW
            DATE: 06/08/11   12:44:10 ID: B05242    TRAN: SU STAT: 003
            AMT. OF C/O $200186.72,ORIG.AMT.$276353.56,ORIG.DATE 9/23/10
            LAST PYMT.1/3/11,L/O-BEN PHELPS,A/M-TODD SACHTJEN
            DATE: 06/08/11   12:48:36 ID: B05242    TRAN: SU STAT: 003
            GUARANTORS-ROBERT FAUGHT AND JOSEPH KOZAK,UNSECURED,OUR ATTY
            WALKER,ENTWISTLE,STITES & HARBISON 404-229-3996.
            DATE: 06/08/11   12:53:50 ID: B05242    TRAN: UA STAT: 003
            LEFT MESSAGE FOR TODD TO SEE IF ATTY. WORKING ON JUDGMENT
            ALREADY.
                                              ** CONTINUED **
```

BBT0091

```
R229-2     13:52:41        RECOVERY MANAGEMENT SYSTEM      D08148        10/04/16
ACTIVE     BBT1             View Full Screen Comment                     REL6.1.1

Acct.:      12380002            Name.: FK DUNWOODY LLC

Tran.Cd..: From: __ TO: __
          DATE: 06/08/11   15:18:54 ID: B05242   TRAN: UA STAT: 006
          PER TODD, MR. FAUGHT SETTLED ON HIS PART ALREADY FOR $75000
          AND THAT AMT. WAS ALREADY DEDUCTED FROM THE TOTAL, LEAVING W
          HAT WE HAVE NOW. ALSO ATTY. IS ALREADY WORKING ON JUDGMENT.
          DATE: 06/08/11   15:21:30 ID: B05242   TRAN: 90 STAT: 006
          REPORTED TO CREDIT BUREAU 6/8/11          * END OF COMMENT(S)
```

BBT0092

# EXHIBIT 6

# STITES & HARBISON PLLC
## ATTORNEYS

303 Peachtree Street, N.E.
2800 SunTrust Plaza
Atlanta, GA 30308
(404) 739-8800
(404) 739-8870 Fax

July 19, 2016

Brian J. Levy
(404) 739-8849
(404) 332-0249 FAX
blevy@stites.com

**BY FIRST CLASS U.S. MAIL AND
CERTIFIED MAIL –
RETURN RECEIPT REQUESTED:**

Mr. Joseph Kozak
723 Golf Vista Court
Alpharetta, Georgia 30004

## NOTICE OF DEFAULT
### Loan No. ███1238-00002

RE:   Promissory Note from FK Dunwoody, LLC and Joseph Kozak (collectively, "Borrowers") in favor of Branch Banking and Trust Company ("Lender") dated September 23, 2010, in the original principal amount of $276,353.56 (the "Note").

Dear Borrower:

We represent and write to you at the request of Lender, the holder of the Note (together with all other documents evidencing, securing or otherwise relating to the indebtedness evidenced by the Note being hereinafter sometimes collectively referred to as the "Loan Documents").

The purpose of this letter is to notify you that the Loan Documents are in default, because of, among other reasons, you have failed to comply with or to perform certain of the terms, obligations, covenants or conditions under the Loan Documents including, the failure to pay obligations under the Note as and when due.

Demand is hereby made upon you for payment in full of the entire outstanding principal balance of the Note, together with all accrued and unpaid interest through the date of payment by you, and all other amounts owing to Lender under the terms of the Loan Documents, including, without limitation, late fees.

As of May 11, 2016, the outstanding amount owing under the Note exclusive of costs, default interest and attorneys' fees was as follows:

| Principal | Interest | Fees | Total | Per Diem |
|---|---|---|---|---|
| $197,645.00 | $68,199.35 | $372.04 | $266,216.39 | $35.20 |

366320:1:ATLANTA

www.stites.com



PLAINTIFF'S
EXHIBIT
8
Kozak

**STITES HARBISON** PLLC
ATTORNEYS

Mr. Joseph Kozak
July 19, 2016
Page 2

*The amounts owing under the Note as set forth herein shall not constitute or be deemed to constitute any waiver, release or impairment of any kind of the rights of Lender to recalculate the entire outstanding balance of the Note at the default rate and to add all other charges and fees as provided for under the Loan Documents, including attorneys' fees, all of which rights are hereby expressly reserved.*

Please be further advised that the Loan Documents provide for the payment of the costs and expenses of collection of these debt obligations, including reasonable attorneys' fees. Pursuant to Official Code of Georgia Annotated Section 13-1-11, you are hereby notified that you have ten (10) days from your receipt of this notice in which to pay the entire principal balance outstanding on the Loan Documents, together with all accrued and unpaid interest and late fees thereon to the date of payment by you, without the payment of such attorneys' fees. You can avoid the obligation to pay attorneys' fees by paying the sums owed and any additional interest or other charges which may accrue prior to the tender of payment in full within ten (10) days from your receipt of tis notice.

Nothing contained herein shall constitute any waiver of any default or Event of Default that may now exist under the Loan Documents or any fact, event, circumstance or condition which with notice or passage of time, or both, would constitute a default or Event of Default thereunder. Further, nothing contained herein shall constitute or be deemed to constitute any waiver, release or impairment of any kind of any of the rights, powers and remedies of Lender under the Loan Documents, all of which rights, powers and remedies are hereby expressly reserved, or any modification or amendment of any of the terms and provisions of the Loan Documents.

Please govern your actions accordingly.

Very truly yours,

STITES & HARBISON PLLC

Brian J. Levy

BJL:cdj
cc:    Branch Banking and Trust Company

366320:1:ATLANTA

# EXHIBIT 7

```
CL91    *** BUSINESS LOAN - HISTORY INQUIRY ***    TERMINAL ID 112H DATE 10/18/16
FK DUNWOODY LLC                                                      PAGE # 0001
                                     TRAN AMOUNT/
POST-DTE EFF-DATE BAT TC CD SEQ      RATE/DATE      TRAN DESC      PRIN-BALANCE

09/30/10 09/29/10 002 17 58              100.00     ORIGINATIO
                                                    CHARGED

09/30/10 09/29/10 002 42 58              100.00     ORIGINATIO
                                                    PAYMENT

09/30/10 09/29/10 002 11             276,353.56     NEW PRIN        276,353.56
                                     276,353.56     PROCEEDS

10/01/10 09/29/10 030 24                 388.95     ACCR ADJ        276,353.56

11/16/10 11/16/10 000 17 93              186.02     LATE FEES
                                                    CHARGED

11/29/10 11/29/10 049 84                    .00     PRIN PMT        276,353.56
                                       1,900.00     INT PMT
```

CUSTOMER # ▉▉▉1238 NOTE # 00002          CUSTOMER # ▉▉▉1238 NOTE # 00002
       PF4= CL44   PF7= PAGE FORWARD   PF9= FINAL PAGE

BBT0085

```
CL91    *** BUSINESS LOAN - HISTORY INQUIRY ***    TERMINAL ID 112H DATE 10/18/16
FK DUNWOODY LLC                                                     PAGE # 0002
                                        TRAN AMOUNT/
POST-DTE EFF-DATE BAT TC CD SEQ          RATE/DATE    TRAN DESC    PRIN-BALANCE

12/03/10 12/03/10 111 86                 1,485.16    PRIN PMT        274,868.40
                                           335.15    INT PMT
                                         1,820.31    TOTL PMT

12/07/10 12/03/10 070 89 10              1,485.16    PRIN REV        276,353.56
                                           335.15    INT REV
                                                     INSUFFICIENT FUNDS
                                         1,820.31    TOTL REV

12/07/10 12/07/10 070 17 20                 28.00    RETURN PMT
                                                     CHARGED

12/13/10 12/07/10 037 18 20                 28.00    RETURN PMT
                                                     CHARGD REV


CUSTOMER #        1238 NOTE # 00002    CUSTOMER #       1238 NOTE # 00002
  PF4= CL44   PF7= PAGE FORWARD   PF8= PAGE BACK PF9=FINAL PAGE
```

BBT0086

```
CL91    *** BUSINESS LOAN - HISTORY INQUIRY ***     TERMINAL ID 112H DATE 10/18/16
FK DUNWOODY LLC                                                      PAGE # 0003
                                   TRAN AMOUNT/
POST-DTE EFF-DATE BAT TC CD SEQ    RATE/DATE      TRAN DESC     PRIN-BALANCE

12/13/10 12/13/10 111 86             1,485.16     PRIN PMT       274,868.40
                                       335.15     INT PMT
                                     1,820.31     TOTL PMT

12/16/10 12/16/10 000 17 93            186.02     LATE FEES
                                                  CHARGED

01/04/11 01/03/11 049 84             2,223.40     PRIN PMT       272,645.00
                                     1,496.91     INT PMT
                                     3,720.31     TOTL PMT

04/15/11 04/15/11 000 31             6,462.60     INT WVD        272,645.00

05/25/11 05/24/11 002 82            75,000.00     PRIN REDUC     197,645.00

05/31/11 11/05/10 000 20 93            186.02     LATE FEES
                                                  WAIVER
CUSTOMER #      1238 NOTE # 00002        CUSTOMER #      1238 NOTE # 00002
   PF4= CL44    PF7= PAGE FORWARD   PF8= PAGE BACK PF9=FINAL PAGE
```

BBT0087

```
CL91    *** BUSINESS LOAN - HISTORY INQUIRY ***    TERMINAL ID 112H DATE 10/18/16
FK DUNWOODY LLC                                                      PAGE # 0004
                                     TRAN AMOUNT/
POST-DTE EFF-DATE BAT TC CD SEQ      RATE/DATE      TRAN DESC     PRIN-BALANCE

05/31/11 12/05/10 000 20 93              186.02    LATE FEES
                                                   WAIVER

05/31/11 05/31/11 000 90 03          197,645.00    CHGOFF-PRN          0.00
```

CUSTOMER # ███1238 NOTE # 00002        CUSTOMER # ███1238 NOTE # 00002
          PF4= CL44    FINAL PAGE  -  PF8= PAGE BACK

BBT0088

# EXHIBIT 8



**Business Loan Recovery - Payoff Quote**

| Name | FK Dunwoody LLC |
| --- | --- |
| RMS # | 12380002 |
| Payoff Quote Date | 3/28/2018 |
| Payoff Through Date | 3/28/2018 |
| Payoff Purpose | Official Payoff Quote |

| | |
| --- | --- |
| Original Note Date | 9/23/2010 |
| Interest Start Date | 1/5/2011 |
| Unpaid Principal Balance | $ 272,645.00 |
| Interest Rate | 6.50% |

### Payment Application

| Date | Interest Rate | Payment Amount | Per Diem | # of Days Elapsed | Interest Accrued | Interest Paid | Principal Paid | Unpaid Balance (w/ Interest) | Principal Balance (100% payments applied to prin) |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1/5/2011 | 6.50% | | | | | | | $ 272,645.00 | $ 272,645.00 |
| 5/24/2011 | 6.50% | $ 75,000.00 | 49.23 | 139 | $ 6,842.63 | - | $ 75,000.00 | $ 204,487.63 | $ 197,645.00 |
| 6/13/2017 | 6.50% | - | 35.69 | 2212 | $ 78,937.22 | - | $ - | $ 283,424.85 | $ 197,645.00 |
| 6/14/2017 | 6.75% | - | 37.06 | 1 | $ 37.06 | - | $ - | $ 283,461.91 | $ 197,645.00 |
| 12/12/2017 | 6.75% | - | 37.06 | 181 | $ 6,707.58 | - | $ - | $ 290,169.48 | $ 197,645.00 |
| 12/13/2017 | 7.00% | - | 38.43 | 1 | $ 38.43 | - | $ - | $ 290,207.92 | $ 197,645.00 |
| 3/20/2018 | 7.00% | - | 38.43 | 97 | $ 3,727.80 | - | $ - | $ 293,935.72 | $ 197,645.00 |
| 3/21/2018 | 7.25% | - | 39.80 | 1 | $ 39.80 | - | $ - | $ 293,975.52 | $ 197,645.00 |
| 3/29/2018 | 7.25% | - | 39.80 | 8 | $ 318.43 | - | $ - | $ 294,293.95 | $ 197,645.00 |
| | | - | - | 0 | $ - | - | $ - | $ - | $ - |
| | | - | - | 0 | $ - | - | $ - | $ - | |

| | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Totals | | $ 75,000.00 | | | $ 96,648.95 | $ - | $ 75,000.00 | |
| Totals from Overflow | | $ - | | | $ - | $ - | $ - | |
| Grand Totals | | $ 75,000.00 | | | $ 96,648.95 | $ - | $ 75,000.00 | |

| Balance Owed as of | | 3/28/2018 |
| --- | --- | --- |
| Principal | $ | 197,645.00 |
| Interest | $ | 96,648.95 |
| Pre-Charge Off Interest | | |
| Pre-Charge Off Fees | $ | 372.04 |
| Other Fees & Expenses | $ | - |
| Adjustments (notate in comments) | $ | - |
| Total | $ | 294,665.99 |

**NOTATIONS/COMMENTS**

Payoff calculation based on loan history screen dated 10/18/16. Per the Promissory Note, the interest rate is a variable rate of Prime plus 2.50% with a floor of 6.50% to be adjusted daily as the Bank's Prime Rate changes. The variable interest rate exceeded the floor of 6.50% when the Bank's Prime Rate changed on the following dates: 6/14/17, 12/13/17, and 3/21/18. The payment received on 5/24/2011 is Robert Faught's settlement payment.

Prepared By: Amelia Sisk

Asset Manager Signature:

Created Date: 3/24/2017
Last Edited Date: 3/24/2017

# EXHIBIT 9

**From:**      Corporate E-Mail Distribution <corpemail@BBandT.com>
**Sent:**       Wednesday, March 15, 2017 4:39 PM
**To:**          Corporate E-Mail Distribution
**Subject:**    BB&T Increases Prime Lending Rate

Please be advised BB&T is increasing the BB&T Prime Lending Rate for borrowers from 3.75% to 4.00%, effective 3/15/2017.

This message contains information intended for BB&T associates and is for internal use only. If this message does not apply to you or your area of responsibility, please delete it.

1

| | |
|---|---|
| **From:** | Corporate E-Mail Distribution <corpemail@BBandT.com> |
| **Sent:** | Wednesday, June 14, 2017 3:52 PM |
| **To:** | Corporate E-Mail Distribution |
| **Subject:** | BB&T Increases Prime Lending Rate |

Please be advised that BB&T is increasing the BB&T Prime Lending Rate for borrowers from 4.00% to 4.25%, effective 6/14/2017.

This e-mail has been approved and sent by:

Commercial Credit Administration
200 West 2nd Street, 8th Floor
Winston-Salem, NC 27102

CCA/ARGRiskManagement@BBandT.com <mailto:CCA/ARGRiskManagement@BBandT.com>

The information in this transmission may contain proprietary and non-public information of BB&T or its affiliates and may be subject to protection under the law. The message is intended for the sole use of the individual or entity to which it is addressed. If you are not the intended recipient, you are notified that any use, distribution or copying of the message is strictly prohibited. If you received this message in error, please delete the material from your system without reading the content and notify the sender immediately of the inadvertent transmission.

| | |
|---|---|
| **From:** | Corporate E-Mail Distribution <corpemail@BBandT.com> |
| **Sent:** | Wednesday, December 13, 2017 5:13 PM |
| **To:** | Corporate E-Mail Distribution |
| **Subject:** | BB&T Increases Prime Lending Rate |

Please be advised BB&T is increasing the BB&T Prime Lending Rate for borrowers from 4.25% to 4.50%, effective 12/13/2017.

This e-mail has been approved and is being sent by:

Commercial Credit Administration
200 West 2nd Street, 8th Floor
Winston-Salem, NC 27101

Please contact <mailto:CCA/ARGRiskManagement@BBandT.com> CCA/ARGRiskManagement@BBandT.com with any questions.

* Citrix users must log on to network: For associates who access the BB&T network through a remote access service

such as Citrix, (e.g., AmRisc, CRC, Crump Life, McGriff, Tapco, Target/Negley and others), be sure to log on before navigating to InSite.

This message contains information intended for BB&T associates and is for internal use only.

If this message does not apply to you or your area of responsibility, please delete it.

| | |
|---|---|
| **From:** | CCA/ARG Risk Management <CCA/ARGRiskManagement@BBandT.com> |
| **Sent:** | Friday, March 23, 2018 3:59 PM |
| **Subject:** | BB&T Increases Prime Lending Rate |

Please be advised that BB&T increased the BB&T Prime Lending Rate for borrowers from 4.5% to 4.75% effective 3/21/2018.

This e-mail has been approved and is being sent by:

Commercial Credit Administration

200 West 2nd Street, 8th Floor

Winston-Salem, NC 27102

Please contact CCA/ARGRiskManagement@BBandT.com <mailto:CCA/ARGRiskManagement@BBandT.com> with any questions.

1