IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRANCH BANKING AND TRUST
COMPANY,

    Plaintiff,

    v.

JOSEPH KOZAK,

    Defendant.

CIVIL ACTION FILE
NO. 1:16-CV-2819-TWT

**OPINION AND ORDER**

This is an action to recover on a promissory note. It is before the Court on the Plaintiff Branch Banking and Trust Company's Motion for Summary Judgment [Doc. 33]. For the reasons set forth below, the Plaintiff Branch Banking and Trust Company's Motion for Summary Judgment [Doc. 33] is GRANTED.

**I. Background**

On March 31, 2003, FK Dunwoody, LLC ("FK Dunwoody") executed and delivered a promissory note (the "Original Note") to the Plaintiff Branch Banking and Trust Company ("BB&T") in exchange for a loan of $383,000 (the "Loan").[1] The Defendant Joseph Kozak and Joseph Faught were members and

---

[1] Pl.'s Statement of Material Facts ¶¶ 1-2.

managers of FK Dunwoody.[2] Kozak, Faught, and their wives personally guaranteed the Original Note.[3] FK Dunwoody and BB&T entered into multiple Note Modification Agreements that extended the maturity date of the Original Note.[4] In 2010, Kozak and Faught agreed to execute a new promissory note for the same Loan.[5] However, this time they signed the note as principal obligors along with FK Dunwoody, instead of as guarantors of the Loan.[6] On September 23, 2010, Kozak, both in his individual capacity and in his capacity as member and manager of FK Dunwoody, executed and delivered to BB&T a promissory note (the "Second Note") in the amount of $276,353.56.[7] Likewise, Faught, both in his individual capacity and in his capacity as member and manager of FK Dunwoody, executed and delivered an identical promissory note to BB&T.[8] The

---

[2] *Id.* ¶¶ 6-7.

[3] *Id.* ¶ 3.

[4] *Id.* ¶ 4.

[5] *Id.* ¶ 5. Kozak disputes this fact, and argues that the Second Note "makes no reference to any prior notes or loan entered into between the parties." *See* Def.'s Response to Pl.'s Statement of Material Facts. However, Kozak admitted during his deposition testimony that the Second Note was a restructuring of the Original Note and intended to memorialize the remaining balance of the same Loan. *See* Kozak Dep. at 38-40. Given this, no genuine dispute exists as to this fact.

[6] Pl.'s Statement of Material Facts ¶ 5.

[7] *Id.* ¶ 6; Schramm Decl. [Doc. 33-3], Ex. 3 at 25-28.

[8] Pl.'s Statement of Material Facts ¶ 7; Schramm Decl., Ex. 4 at 30-33.

principal amount of $276,353.56 in the Second Note reflected the then-outstanding principal balance owed on the Loan.[9]

The Second Note provides that "the undersigned, jointly and severally, if more than one, promises to pay to [BB&T] . . . the sum of" $276,353.56.[10] The Second Note further states that "[i]f more than one party shall execute this Note, the term 'undersigned' as used herein shall mean all the parties signing this Note and each of them, and all such parties shall be jointly and severally obligated hereunder."[11] Kozak, Faught, and FK Dunwoody each also agreed that any release of liability by BB&T as to one of them would not discharge the liability of the others.[12] The Second Note provides that "[t]he holder hereof, from time to time, shall have the unlimited right to release any person who might be liable hereon, and such release shall not affect or discharge the liability of any other person who is or might be liable hereon."[13]

Kozak, Faught, and FK Dunwoody defaulted on the Second Note by failing to repay the Loan in full by the maturity date of January 5, 2011.[14] On

---

[9] Pl.'s Statement of Material Facts ¶ 8.

[10] *Id.* ¶ 9; Schramm Decl., Ex. 3 at 25.

[11] Pl.'s Statement of Material Facts ¶ 10; Schramm Decl., Ex. 3 at 27.

[12] Pl.'s Statement of Material Facts ¶ 11; Schramm Decl., Ex. 3 at 27.

[13] Schramm Decl., Ex. 3 at 27.

[14] Pl.'s Statement of Material Facts ¶ 13. Kozak disputes this fact, arguing that the Second Note was not valid since BB&T never disbursed the funds referenced in the note and because it lacked consideration. *See* Def.'s

May 24, 2011, Faught made a payment of $75,000 to resolve his individual obligation to BB&T.[15] BB&T did not accept this payment in satisfaction of the Loan or intend for it to release Kozak from his obligations under the Second Note.[16] On July 19, 2016, BB&T provided Notice of Default by letter to Kozak as a result of his failure to repay the Loan in full upon maturity of the Second Note.[17] The Notice of Default provided Kozak with ten days from its receipt to pay all outstanding amounts owed under the Loan without incurring liability for BB&T's attorneys' fees.[18] Kozak did not pay the Loan in full in this ten-day period.[19] On August 3, 2016, BB&T filed this lawsuit. The Court administratively closed this case on January 26, 2017, due to a Chapter 7 bankruptcy filing by Kozak.[20] On January 25, 2018, the Court granted BB&T's Motion to Reopen Case after the U.S. Bankruptcy Court for the Northern District of Georgia

---

Response to Pl.'s Statement of Material Facts ¶ 13. However, as discussed below, these arguments fail to create an issue of material facts as to the Second Note's validity.

[15] Pl.'s Statement of Material Facts ¶ 15; Schramm Decl. ¶ 14; Kozak Dep., Ex. 7 ¶ 5, at 155.

[16] Pl.'s Statement of Material Facts ¶ 16; Schramm Decl. ¶ 15.

[17] Pl.'s Statement of Material Facts ¶ 20; Schramm Decl., Ex. 6.

[18] Pl.'s Statement of Material Facts ¶ 21; Schramm Decl., Ex. 6.

[19] Pl.'s Statement of Material Facts ¶ 22. Kozak denies this fact, arguing that he never received the funds referenced in the Second Note. *See* Def.'s Response to Pl.'s Statement of Material Facts ¶ 22. However, as discussed below, Kozak has failed to show that a genuine dispute exists as to this fact.

[20] *See* [Doc. 23].

entered an order dismissing Kozak's bankruptcy.[21] BB&T now moves for summary judgment.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[22] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[23] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[24] The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists.[25] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[26]

---

[21] *See* [Doc. 24] and [Doc. 25].

[22] FED. R. CIV. P. 56(a).

[23] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

[24] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[25] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

[26] *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

III. Discussion

BB&T argues that it is entitled to judgment as a matter of law because there is no genuine dispute of material fact as to Kozak's liability under the Second Note, BB&T's right to attorneys' fees under O.C.G.A. § 13-1-11(a)(2), or Kozak's affirmative defenses.[27] Kozak responds that BB&T has failed to show that the Second Note related to the Loan, that BB&T failed to show that it ever disbursed the funds referenced in the Second Note to Kozak, and that the Second Note lacked consideration. The Court concludes that BB&T is entitled to summary judgment as to each of these issues.

### A. Liability on the Second Note

BB&T first argues that there is no genuine issue of material fact as to Kozak's liability on the Second Note. It argues that it has established a prima facie case for breach of the Second Note, and that Kozak has failed to establish an affirmative defense.[28] "A creditor in possession of a valid and signed promissory note has a prima facie right to repayment, unless the debtor can establish a valid defense."[29] "In a suit to enforce a promissory note, a plaintiff establishes a prima facie case by producing the note and showing that it was

---

[27] Pl.'s Mot. for Summ. J., at 8-9.

[28] *Id.* at 9, 11-13.

[29] *City of Bremen v. Regions Bank*, 274 Ga. 733, 739 (2002).

executed."[30] "Once that prima facie case has been made, the plaintiff is entitled to judgment as a matter of law unless the defendant can establish a defense."[31] "A debtor cannot defeat this prima facie right of repayment by denying the debt for general reasons; it must assert a valid affirmative defense, such as estoppel or illegality."[32] Kozak makes three arguments in response. First, Kozak argues that BB&T has failed to provide any evidence that it disbursed the $276,353.56 referenced in the Second Note to him.[33] Second, he argues that BB&T has failed to provide evidence that the Second Note is "in anyway connected to or was an extension of any prior notes entered into between the parties in this matter."[34] Third, Kozak contends that BB&T failed to prove that "any consideration was

---

[30] *L.D.F. Family Farm, Inc. v. Charterbank*, 326 Ga. App. 361, 363 (2014).

[31] *Id.* (quoting *Myers v. First Citizens Bank & Trust Co.*, 324 Ga. App. 293, 295 (2013)).

[32] *City of Bremen*, 274 Ga. at 739; *see also First Citizens Bank & Trust Co. v. Hwy 81 Venture, LLC*, No. 1:10-cv-02126-JEC, 2012 WL 779894, at *2 (N.D. Ga. Mar. 6, 2012) ("A debtor's denial of the debt for general reasons is insufficient to overcome this prima facie right to repayment. Only a valid affirmative defense, such as estoppel, illegality, accord and satisfaction, failure of consideration, and the like will suffice.").

[33] Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J., at 3.

[34] *Id.*

given to the Defendant for entering into" the Second Note.[35] However, the Court finds each of these arguments unpersuasive.[36]

In his first two arguments, Kozak contends that BB&T failed to show that the Second Note was related to the Original Note, or that it disbursed the amount recited in the Second Note. However, these arguments fail for two main reasons. First, these arguments are not valid affirmative defenses, but instead are "general reasons" for denying the debt.[37] BB&T has established a prima facie case for enforcement of the Second Note by producing the note and showing that it was executed by Kozak.[38] Under Georgia law, such arguments cannot rebut BB&T's prima facie showing of a valid promissory note.

Nonetheless, these arguments would still fail. There is no genuine dispute that the Second Note related to the same antecedent Loan memorialized in the Original Note. The Second Note was a restructuring of Kozak's obligations under the original Loan. Kozak admitted this in his deposition testimony, and BB&T has provided corroborating evidence. This evidence shows that in 2003, BB&T lent FK Dunwoody $383,000, which was reflected in the Original Note.[39]

---

[35] *Id.*

[36] Kozak has not asserted any of the affirmative defenses that were raised in his Answer, including payment, release, or accord and satisfaction. The Court thus deems these affirmative defenses to be waived.

[37] *See City of Bremen*, 274 Ga. at 739.

[38] *See* Schramm Decl., Ex. 3.

[39] Kozak Dep. at 33.

Kozak stated during his deposition that the Second Note was a restructuring of the Original Note, and was not related to a new loan.[40] Kozak further admitted that the principal amount recited in the Second Note, $276,353.56, was the amount outstanding on the Loan as of September 23, 2010, the date that he executed the Second Note.[41] Therefore, BB&T did not disburse any new funds to Kozak, Faught, or FK Dunwoody because the Second Note was only a restructuring of their already existing obligations. Kozak further admits that the Second Note, the Original Note, and the various modifications over the years to the Original Note all relate to the same Loan of $383,000.[42] Therefore, Kozak's arguments fail to dispute BB&T's prima facie showing of a right to repayment under the Second Note.

Kozak then argues that the Second Note is unenforceable since it lacked consideration.[43] However, Kozak did in fact receive consideration for the Second Note. A negotiable instrument such as a promissory note "is presumed to be based on a valid and sufficient consideration."[44] The Second Note extended the maturity date on the Loan and reduced the interest rate. The Original Note

---

[40] *Id.* at 39; *see also* Schramm Decl. ¶¶ 8, 11.

[41] Kozak Dep. at 44-46; Schramm Decl. ¶ 11.

[42] Kozak Dep. at 98-99; Schramm Decl. ¶ 8.

[43] Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J., at 4.

[44] *Smith v. Thigpen*, 298 Ga. App. 572, 573 (2009).

matured on August 5, 2010.[45] The Second Note extended the maturity date until January 5, 2011.[46] The Second Note also lowered the interest rate to the Bank's Prime Rate plus 2.500% per annum, with a minimum rate of 6.500%.[47] This was lower than the interest rate in the Original Note, which was the Bank's Prime Rate plus 4.500% per annum, with a minimum rate of 8.750%.[48] These alterations in the promissory note's terms constitute valid consideration.[49]

Furthermore, no consideration was necessary for execution of the Second Note because it related to an antecedent debt. "No new consideration need be given for an instrument if the instrument is given in payment of, or as security for, an antecedent obligation of any kind."[50] "An instrument given in 'payment

---

[45] A Note Modification Agreement dated June 25, 2010, provided for this maturity date. *See* [Doc. 34] at 305.

[46] *See* Schramm Decl., Ex. 3 at 25.

[47] *Id.*

[48] *See* [Doc. 34] at 305.

[49] *See, e.g.*, *Feely v. First Am. Bank of Ga., N.A.*, 206 Ga. App. 53, 58 (1992) (concluding that adequate consideration was provided when the debtor "gained additional time to attempt to split the loan obligation into two, longer-term obligations" and "obtained per force the forbearance of the bank as to the prosecution of any claim based on the $50,000 line of credit corporate obligation"); *Graphic Prep, Inc. v. Graphcom, Inc.*, 206 Ga. App. 689, 691 (1992) ("As consideration for the execution of a note and guaranty, appellee gave Graphic Prep additional time in which to pay off the indebtedness. We conclude that this forbearance from commencement of collection efforts constituted a benefit to Graphic Prep as well as the Zehs who are the sole principals of Graphic Prep.").

[50] *Smith*, 298 Ga. App. at 573.

of, or as security for, an antecedent claim against any person, whether or not the claim is due[ ]' is given for value."[51] Thus, since it is given for "value," it is given for consideration.[52] Here, Kozak admitted that the principal amount of the Second Note reflected the amount owed on the antecedent obligation. BB&T therefore need not demonstrate that it gave new consideration for the Second Note. Given these concessions by Kozak, along with evidence provided by BB&T, no dispute of material fact exists as his liability on the Second Note.

### B. Damages

Next, BB&T argues that it is entitled to summary judgment as to the amount of money owed under the Second Note. BB&T contends that, as of March 29, 2018, the following amounts are owed on the Second Note: (1) a principal balance in the amount of $197,645.00; (2) accrued interest in the amount of $96,648.95; (3) *per diem* interest in the amount of $39.80 from March 29, 2018, until the date of this Order; and (4) pre-charge off fees in the amount of $372.04.[53] Kozak provides no response. These amounts are supported by evidence offered by BB&T.[54] Based on the record, the Court finds that BB&T has provided "sufficient evidence regarding [BB&T's] calculation of damages to allow

---

[51] *Id.*

[52] *Id.*

[53] Pl.'s Mot. for Summ. J., at 7-8, 10. The "pre-charge off fees" refer to fees owed by Kozak to BB&T relating to his delinquency on the Loan, and not attorneys' fees. *See* Schramm Decl. ¶ 26, Ex. 8 at 46.

[54] *See* Schramm Decl. ¶ 26, Ex. 8 at 46.

the Court to calculate the amount of the loss to a reasonable degree of certainty."[55] Therefore, the Court finds that there is no dispute of material fact, and BB&T is entitled to summary judgment as to damages in the amounts listed above.

### C. Attorneys' Fees

Finally, BB&T argues that it is entitled to attorneys' fees as a matter of law. According to BB&T, it is entitled to an award of "reasonable attorneys' fees" pursuant to both the terms of the Second Note and O.C.G.A. § 13-1-11. "[A]ttorney fees sought under OCGA § 13–1–11 are mandatory where the statute's conditions have been clearly satisfied."[56] In order to enforce this attorneys' fees provision, a lender must first notify a guarantor that it plans on enforcing the provision, and the guarantor then has ten days to pay off the principal and interest without incurring attorneys' fees.[57] Once this condition has been satisfied, payment of attorneys' fees becomes "mandatory."[58] BB&T notified Kozak of its intention to seek attorneys' fees in the Notice of Default,

---

[55] *Branch Banking and Trust Co. v. Meng*, No. 1:13-CV-4179-TCB, 2014 WL 11460362, at *3 (N.D. Ga. Nov. 6, 2014), *aff'd in part, remanded in part*, 598 F. App'x 900 (11th Cir. 2015).

[56] *Austin v. Bank of Am., N.A.*, 293 Ga. 42, 51 (2013).

[57] O.C.G.A. § 13-1-11(a)(3).

[58] *Austin*, 293 Ga. at 51.

and gave Kozak the required ten days to be able to pay off the principal and interest.[59] Kozak did not do so. As such, BB&T is entitled to attorneys' fees.

The Second Note provides for "reasonable attorneys' fees,"[60] which § 13-1-11 states "shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00."[61] Thus, as of March 29, 2018, BB&T is owed attorneys' fees equal to $29,454.40 (($197,645.00 principal + $96,648.95 interest - $500) x .10 + $500.00 x .15), plus *per diem* interest in the amount of $3.98 from March 29, 2018 until the date of this Order ($82.17 *per diem* damages interest x .10).

## IV. Conclusion

For the reasons stated above, the Plaintiff's Motion for Summary Judgment [Doc. 33] is GRANTED.

SO ORDERED, this 5 day of June, 2018.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[59] Kozak Dep. at 55-56; Schramm Decl., Ex. 6 at 38-39.

[60] Schramm Decl., Ex. 3 at 27.

[61] O.C.G.A. § 13-1-11(a)(2).